**Louis MAZZELLA and Sentinel Brokerage Corp., Plaintiffs,**

v.

**PHILADELPHIA NEWSPAPERS, INC. and William Lambert, Defendants.**

**No. 77 C 1011.**

United States District Court, E. D. New York.

Nov. 2, 1979.

Friedlander, Gaines, Cohen, Rosenthal & Rosenberg, New York City by Edward Cherney, New York City, for plaintiffs.

Farrell, Fritz, Caemmerer & Cleary, Williston Park, N. Y., and Kohn, Savett, Marion & Graf, Philadelphia, Pa. by Samuel E. Klein, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This motion to compel discovery arises in a libel action brought by Louis Mazzella, for himself and Sentinel Brokerage Corporation ("Sentinel"), against Philadelphia Newspapers, Inc. ("PNI"), publisher of the *Philadelphia Inquirer*, and William Lambert, an *Inquirer* reporter. The action was originally commenced in Supreme Court, Nassau County, and later removed to this court by defendants on the ground of diversity of citizenship, pursuant to 28 U.S.C. § 1441. The question presented is whether Lambert can be compelled to divulge certain allegedly confidential information upon which one of his news stories was based.

The parties' papers reveal the following facts. Mazzella is an insurance broker licensed by the New York State Insurance Department. He is also the president, chief operating officer and principal shareholder of Sentinel, a New York corporation engaged in the insurance business and head-

quartered in Nassau County, where Mazzella resides. On May 2, 1976, the *Inquirer* published under Lambert's byline an article detailing the Pennsylvania Insurance Department's ("PID") operation and eventual sale of the Colonial Assurance Company ("Colonial") to Mazzella at what was supposedly a "bargain-basement price" during the liquidation of Colonial's insolvent parent. According to the allegations of the complaint, the article also states—by innuendo—that Mazzella "had entered into a corrupt arrangement with officials of the Insurance Department of the Commonwealth of Pennsylvania to secure the said Department's approval of Mazzella's purchase of an insurance company . . . at a price far less than the true worth thereof, thereby defrauding the people of the Commonwealth of Pennsylvania." Complaint at ¶ 11. In answer to Mazzella's charge that the article contains false and defamatory matter and that defendants acted in a "grossly irresponsible [manner] without due consideration for the standards of information-gathering and dissemination ordinarily followed by responsible persons," Complaint at ¶ 13, defendants *inter alia* aver that the statements complained of are true or substantially true and that they in any event acted in good faith.

As part of their discovery in this action, plaintiffs noticed and took Lambert's deposition. During the deposition, Lambert claims he produced "voluminous" documentation requested by plaintiffs. He balked, however, when asked to reveal the names of his confidential sources. Although the relevance of the names of these sources is disputed, defendants resist disclosure upon a claim of privilege created by Pennsylvania statute.

Under Pennsylvania law confidential communications to news reporters are protected by a "shield." The statute provides in relevant part:

"(a) No person, engaged on, connected with or employed by any newspaper of general circulation as defined by the laws of this Commonwealth . . . for the purpose of gathering, procuring, compiling, editing or publishing news, shall be required to disclose the source of any information procured or obtained by such person, in any legal proceeding, trial or investigation before any court, grand jury, traverse or petit jury, or any officer thereof . . . ." Pa.Stat.Ann. tit. 28 § 330(a).

Although the quoted law seemingly admits of no exceptions, plaintiffs contend that the statute is inapplicable in a libel action in which the reporter or newspaper is named as a defendant, since a literal application of the statute would have the effect of precluding plaintiffs from discovering evidence sufficient to meet their burden of proving that defendants acted with some degree of fault as required in cases of this kind by *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Plaintiffs' argument, which is not without appeal, is that without access to the identities of Lambert's sources and his notes, they will be unable to meet their concededly difficult burden of proof.

Plaintiffs' discovery motion squarely presents a conflict between the rights of civil litigants to press their libel claims in federal court and the rights of news reporters and papers to protect their confidential sources and presumably the free flow of information to the public. As a matter of constitutional law, no absolute rule of privilege protects newsmen, and an assertion of privilege under the First Amendment requires a careful balancing of the interests of those seeking disclosure of confidential sources with the interests of those seeking to avoid such disclosure. The Supreme Court in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), struck the balance in favor of the grand jury's need for information in its investigation of crime. In *Matter of Farber and the New York Times*, 78 N.J. 259, 394 A.2d 330 (1978), *cert. denied sub nom. New York Times v. New Jersey*, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978), the Court let stand the balance struck by the New Jersey Supreme Court in favor of a criminal defendant's need for information

relevant to his defense over a reporter's claim that the First Amendment and a statutory shield law privilege required a different result. Thus, while a favored amendment, the first amendment does not afford absolute protection and must yield in certain circumstances. *Cf. United States v. Hubbard,* slip op. (D.D.C. Aug. 27, 1979).

In civil litigation, however, the interests that litigants have in forcing disclosure are typically not as compelling as the considerations that led the *Branzburg* and *Farber* Courts to their conclusions. In *Baker v. F. & F. Investment,* 470 F.2d 778, 785 (2 Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973), the court noted that:

> "If, as Mr. Justice Powell noted in [*Branzburg*], instances will arise in which the First Amendment values outweigh the duty of a journalist to testify even in the context of a criminal investigation, surely in civil cases, courts must recognize that the public interest in non-disclosure of journalists' confidential news sources will often be weightier than the private interest in compelled disclosure."

See *Altemose Const. v. Bldg. & Const. Trades Council,* 443 F.Supp. 489 (E.D.Pa. 1977); *Apicella v. McNeil Laboratories, Inc.,* 66 F.R.D. 78, 83 (E.D.N.Y.1975); *Democratic National Committee v. McCord,* 356 F.Supp. 1394 (D.D.C.1973).

While the Supreme Court has recently shed some light on the right of news gatherers to resist disclosure of their editorial thoughts and processes when named as defendants in a libel action, see *Herbert v. Lando,* 441 U.S. 53, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), it has not ruled on the precise issue presented here, namely whether a newsman's confidential sources are similarly subject to disclosure in a libel action in which the newsman is named a defendant over his claim of statutory shield law privilege. Before addressing that issue, however, a threshold question must be decided, and that is the law applicable to this suit by a New York citizen against a Pennsylvania reporter and newspaper which is also distributed in New York. In that connection it should be noted that New York also has a "shield law," N.Y.Civil Rights Law § 79–h, which was recently construed in *Greenberg v. CBS Inc.,* 419 N.Y.S.2d 988 (2d Dept. 1979).

Since this is a diversity action and the issue is one of privilege, we must look to the Federal Rules of Evidence for guidance. Rule 501 makes it clear that the question of privilege is governed by State law,[1] which means in the first instance the law of the State where the federal court sits. See *Samuelson v. Susen,* 576 F.2d 546, 549 (3 Cir. 1978); 4 Moore's Federal Practice ¶ 26.-60[7] at 259–60 (2d ed.1978). This of course, is the same result that would be reached by application of *Erie* principles, *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to a state created privilege conferring substantive rights beyond federal procedural rules, see *Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 555–56 n. 2 (2 Cir. 1967), and is consistent with the legislative intent underlying Rule 501. See H.R.Rep.No.650, 93rd Cong., 1st Sess. 9 (1973), U.S.Code Cong. & Admin. News 1974, p. 7051; *Samuelson v. Susen, supra,* 576 F.2d at 550. Thus, in determining which State's law of privilege applies, the court must look to New York's conflict of law rules. *Id.* at 550–51. See *Klaxon v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

---

1. Rule 501 of the Federal Rules of Evidence provides in pertinent part that

> "[e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

■ New York choice of law gives "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283 (1963). See *Loebig v. Larucci*, 572 F.2d 81, 84 (2 Cir. 1978); Restatement Second, Conflicts of Law § 145. In this case, although plaintiffs are New York citizens, defendants are citizens of Pennsylvania and, by plaintiffs' admissions, circulate the *Inquirer* principally in the metropolitan area of Philadelphia, where it is presumably published. Plaintiffs entered into relationships in Pennsylvania when they purchased Colonial. The events that led to the newspaper article, including the news gathering and confidential communications, apparently occurred in Pennsylvania. Finally, Lambert's deposition was taken in Philadelphia.

■ In view of the foregoing, it seems reasonable that New York courts would conclude under appropriate choice of law principles that Pennsylvania has the greatest concern with the question of the newsman's privilege because of its contact with, and interest in, the events here in question. The conclusion that the Pennsylvania law of privilege applies is particularly appropriate, since New York's law with respect to disclosure in these circumstances is not antagonistic to Pennsylvania's and, with the exception of possible differences in its application, is consonant with a policy of non-disclosure of sources of confidential information. See New York Civil Rights Law § 79–h; *Samuelson v. Susen, supra*, 576 F.2d at 551. It is also consistent with the views concerning privileged communication found in the Restatement Second, Conflict of Laws § 139(2), noted in the margin.[2] See also *In re Westinghouse Corp., etc.*, 76 F.R.D. 47, 53–54 (W.D.Pa.1977); *Application of Cepeda*, 233 F.Supp. 465 (S.D.N.Y.

1964); Wright, Law of Federal Courts § 93 at 414–15 (2d Ed.1970). *Cf. Cervantes v. Time, Inc.*, 464 F.2d 986, 989 n. 5 (8 Cir. 1972).

Applying Pennsylvania law to the privilege issue raised, it is manifest that the shield law of that State cannot be limited to legal proceedings in which the newspaper or its news gatherers are not interested parties as plaintiffs urge. The all-encompassing language of the shield law itself precludes any such exception, and the courts of Pennsylvania have interpreted its provisions as conferring blanket protection on those in defendants' position. The Pennsylvania Supreme Court has held that the statute should be narrowly construed in favor of the news media and refused to hold a reporter in contempt for failure to reveal to a grand jury the confidential sources of information he used in writing an article on alleged corruption in city government. *In re Taylor*, 412 Pa. 32, 40, 193 A.2d 181, 185 (1963).

Following *Taylor*, a lower State court has held, on facts quite similar to those presented in this case, that the Pennsylvania shield law is almost impenetrable. The court in *Hepps v. Philadelphia Newspapers, Inc.* (unreported decision dated March 16, 1977, Court of Common Pleas, Chester County), stated that the principles established by the State's highest court in *Taylor* and the broad language of the statute protecting the "source of any information" in "any legal proceeding," precluded a finding of civil contempt for failure of a reporter named as a defendant in a libel action to divulge the identity of his confidential sources. The court also distinguished the line of New Jersey cases construing a similar shield law to the contrary (cited as authority by plaintiffs in this action) by noting that under New Jersey law statutes in derogation of common law are to be strictly construed while the converse is true under

---

**2.** Restatement Second, Conflict of Laws § 139(a), states:

"Evidence that is privileged under the local law of the state which has the most significant relationship with the communication

but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given."

Pennsylvania law. See Pa.Stat.Ann. tit. 46 § 558 (1962).

In a case raising almost an identical issue to the one presented here, the district court for the Western District of Pennsylvania had very little difficulty reaching the conclusion that § 330 precluded production of video tapes held to be sources of information within the meaning of the statute. See *Steaks Unlimited Inc. v. Deaner*, 80 F.R.D. 140 (W.D.Pa.1978). In a diversity action against a former reporter and a television station seeking damages for an alleged defamation, the court reasoned that disclosure of the information sought would reveal other sources of information the Supreme Court of Pennsylvania intended to protect in its *Taylor* decision. *Id.* at 142. See also *Altemose Const. v. Bldg. & Const. Trades Council, supra*, 443 F.Supp. at 491. *Cf. United States v. Homer*, 411 F.Supp. 972, 981 (W.D.Pa.1976), *aff'd*, 545 F.2d 864 (3 Cir. 1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2673, 53 L.Ed.2d 270 (1977).

■ Simply put, while an individual's interest in his reputation is a basic concern, *Herbert v. Lando, supra*, 99 S.Ct. at 1645, its reflection in the laws of defamation is solely a matter of State law. See *Gertz v. Robert Welch, Inc., supra*, 418 U.S. at 342, 94 S.Ct. 2997. A plaintiff's "interest in reputation is simply one of a number which the State may provide against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Paul v. Davis*, the Court held that the interest in reputation asserted in a defamation action is neither liberty nor property guaranteed against State deprivation without due process of law and thus an allegation of injury to reputation, standing alone, fails to state a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment where the defamation is by a State official. Since the State has created the cause of action and hence has substantial latitude in enforcing the remedy, *Gertz v. Robert Welch, Inc., supra*, 418 U.S. at 346–47, 94 S.Ct. 2997, it can limit, modify or perhaps take it away

through the operation of testimonial privileges, absent any claim of constitutional deprivation.

■ Pennsylvania's legislative determination to grant almost absolute protection to a reporter from disclosure of his sources impinges upon no constitutionally protected right, see *Paul v. Davis, supra; cf. Greenberg v. CBS Inc., supra*, 419 N.Y.S.2d at 997, and plaintiffs' moving papers do not seriously assert a constitutional infirmity in the legislative scheme. *Cf. Ex Parte Sparrow*, 14 F.R.D. 351 (N.D.Ala.1953). The legislature's decision then to favor the public's interest in access to information over an individual's State common law right to vindicate his reputation is a matter over which the State has almost complete control and in the circumstances of this case has exercised in a manner adverse to plaintiffs' interests.

*Herbert v. Lando, supra*, decided while this motion was pending, does not require a different result. Noting that evidentiary privileges in litigation are not favored, the Court concluded that the First Amendment should not be construed to create a privilege for "editorial processes." In reaching this conclusion, the Court quoted from Justice Frankfurter's dissenting opinion in *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960), to the effect that "[l]imitations are properly placed upon the operation of this general principle [of no testimonial privilege] only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." 99 S.Ct. at 1648 n. 24.

The Pennsylvania legislature has unequivocally provided a judgment that, in the view of the Pennsylvania Supreme Court, "has placed the gathering and protection of the source of news as of greater importance to the public interest and of more value to the public welfare than the disclosure of the alleged crime or the alleged criminal." *In re Taylor, supra*, 412 Pa. at 42, 193 A.2d at 186. In the absence

of any constitutional right to a cause of action sounding in defamation, an individual's interest in vindicating this interest recognized by State law is clearly not as great as the public's interest in discovering crimes against the State held insufficient to warrant piercing the reporter's shield in *Taylor.* Since the legislature has chosen not to incorporate an exception for libel cases in the statute as it clearly could have, see, *e. g.,* Ill.Rev.Stat. ch. 51, § 111 *et seq.* (1971), it would be highly inappropriate for this court to undertake the task.

■ Finally, plaintiffs' contention that, even if applicable, the shield law protections have been waived in this case is without merit. The argument is not sustainable under the waiver rule announced in *Taylor.* There the court stated that waiver of the shield law applies only to statements made by an informant which are actually published. See also *Steaks Unlimited Inc. v. Deaner, supra,* 80 F.R.D. at 142; *Hepps v. Philadelphia Newspapers, Inc., supra* at 15. Since no such claim is made in this case, plaintiffs' argument that the assertion of good faith defenses waives the statutory protection is insufficient as a matter of Pennsylvania law.

Accordingly, pursuant to the court's discretionary power to limit the ambit of discovery in civil cases, *Baker v. F. & F. Investment, supra,* 470 F.2d 778, plaintiffs' motion to compel discovery of Lambert's confidential sources and notes is denied.[3]

SO ORDERED.

---

**3.** This holding, however, is accompanied by the following caveat. Since the function of all trials is to establish the truth, and since our decision in this case is predicated upon the assumption that Pennsylvania's shield law was enacted primarily to protect *confidential* communications, defendants shall be deemed to have waived the law's protections should they choose to prove their defense through witnesses whose identities are protected from disclosure by this order. Thus, the court would be obliged to grant a continuance during trial sufficient to permit plaintiffs to take discovery of any such witness and conduct any further investigation should that be required. As Judge Friendly has said in another context, "defamed persons have rights to," *Buckley v. New York Post Corporation,* 373 F.2d 175, 180 (2 Cir. 1967).

While this decision imposes upon plaintiffs a not insignificant burden of making out a prima facie case of libel independent of evidence obtained through the mouths of defendants' confidential sources, discovery of these sources during trial—if defendants choose to call them—should adequately protect plaintiffs' interest in having a full opportunity to test the merits of the defense case. This opportunity—or limitation of defendants' proof upon their renewed assertion of privilege—is a reasonable accommodation of the competing interests and finds support in the recent New York case of *Greenberg v. CBS Inc., supra,* 419 N.Y.S.2d at 997.