Carson Wayne NEWTON, etc., Plaintiff,

v.

NATIONAL BROADCASTING COMPANY, INC., etc., et al., Defendants.

Civ. No. LV 81–180 HDM.

United States District Court, D. Nevada.

May 8, 1985.

Morton R. Galane, Galane & Jimmerson, Las Vegas, Nev., Frank J. Fahrenkopf, Jr., Reno, Nev., Thomas Naylor, Las Vegas, Nev., J. Paul McGrath, Asst. Atty. Gen., Richard Levie, Thomas Varba, David An-

derson, Dept. of Justice, Civ. Div., Washington, D.C., Robert Johnston, U.S. Atty., Las Vegas, Nev., for plaintiff.

Dean Vernon, Gifford & Vernon, Las Vegas, Nev., Lillick, McHose & Charles, Amy D. Hogue, Kenneth E. Kulzick, Los Angeles, Cal., Floyd Abrams, Thomas J. Kavaler, Cahill, Gordon & Reindel, New York City, for all defendants.

## ORDER

PHILIP M. PRO, United States Magistrate.

Plaintiff's Revised Amended and Supplemental Complaint (# 309), filed April 30, 1982, sets forth a single claim for defamation allegedly committed during three NBC Nightly News broadcast segments aired on October 6, 1980, November 6, 1980 and June 12, 1981. Plaintiff contends that the three broadcast segments at issue contain sixteen attributions of information to unnamed sources, "mostly alleged state and federal law enforcement authorities". Defendants BRIAN ROSS and IRA SILVERMAN have refused to identify the confidential sources on the grounds that Nevada's shield law (N.R.S. § 49.275), and the First Amendment to the United States Constitution entitle Defendants as journalists to withhold the names and any other information which might lead to the identity of any person who provided Defendants ROSS and SILVERMAN with information under an express or implied promise of confidentiality.

On September 30, 1983, Plaintiff filed a Motion to Compel Disclosure of Confidential Sources or, Alternatively, to Preclude Reliance Upon Such Sources at Trial (# 728). By his Motion, Plaintiff seeks an Order of the Court,

(1) Directing Defendants to supply to Plaintiff the names and addresses of all alleged confidential sources upon which Defendants ROSS and SILVERMAN claim to have relied in preparing the broadcast news segments at issue in this case,

(2) Re-opening discovery for a period of forty-five (45) days following Plaintiff's receipt of the names and addresses of such sources for the purpose of permitting Plaintiff to take discovery of these sources, and

(3) Providing further that in the event Defendants fail or refuse to comply with the Order directing disclosure of the names and addresses of the subject sources, they shall be precluded from testifying to or otherwise relying at trial in any way on the existence of such sources or any information allegedly supplied to Defendants ROSS and SILVERMAN by such sources.

Following is a summary of the extensive briefing schedule which the parties have filed with regard to Plaintiff's Motion:

On October 24, 1983, Defendants BRIAN ROSS and IRA SILVERMAN filed an Opposition to Plaintiff's Motion for Order Compelling Disclosure of Confidential Sources (# 735). On the same date, an Affidavit of Floyd Abrams in Support of Opposition of Defendants BRIAN ROSS and IRA SILVERMAN to Plaintiff's Motion for Disclosure of Confidential Sources was filed (# 736). On December 1, 1983, Plaintiff filed a Reply Memorandum in Support of Plaintiff's Motion for an Order Compelling Disclosure of Confidential Sources, or Alternatively, to Preclude Reliance Upon Such Sources at Trial (# 761). On December 15, 1983, Plaintiff filed an Errata to Reply Memorandum in Support of Plaintiff's Motion for an Order Compelling Disclosure of Confidential Sources, or Alternatively, to Preclude Reliance Upon Such Sources at Trial (# 770). On December 15, 1983, a Supplemental Affidavit of Morton R. Galane in Support of Plaintiff's Motion for an Order Compelling Disclosure of Confidential Sources, or Alternatively, to Preclude Reliance Upon Such Sources at Trial was filed (# 771). On December 16, 1983, Defendants ROSS and SILVERMAN filed a Motion for Leave to File a Sur Reply in Opposition to Plaintiff's Motion for an Order Compelling Disclosure of Confidential Sources (# 778). On December 27,

1983, a Second Errata to Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for an Order Compelling Disclosure of Confidential Sources or, Alternatively, to Preclude Reliance Upon Such Sources at Trial was filed (# 781). On December 27, 1983, Plaintiff filed a Response to Defendants ROSS and SILVERMAN's filing of a Sur Reply in Opposition to Plaintiff's Motion for an Order Compelling Disclosure of Confidential Sources (# 782). On January 5, 1984, the Court conducted a hearing regarding Plaintiff's Motion to Compel Disclosure.

Although Plaintiff has not conceded in his Motion to Compel that he is a "public figure", the undersigned Magistrate has previously entered Findings and a Recommendation that Defendant's Motion for Summary Judgment be granted to the extent that Plaintiff NEWTON be deemed a general purpose public figure in this litigation. Therefore, the Court considers Plaintiff's Motion to Compel herein in the context of Plaintiff's public figure status.

Under *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), Plaintiff, as a public figure, must prove with "convincing clarity" that Defendants acted with "actual malice" in broadcasting the telecasts which Plaintiff claims to be defamatory.

Plaintiff makes a strong argument that discovery of the identity of the confidential sources to which Defendants ROSS and SILVERMAN attribute much of the information contained in the broadcasts at issue is critically important to Plaintiff's ability to meet his burden of proof under *New York Times v. Sullivan, supra*. Plaintiff argues that it would be unfair to permit Defendants to defend this action with the claim that they merely reported in good faith what their confidential sources told them without giving Plaintiff the opportunity to test the reliability of said confidential sources and Defendants' good faith reliance thereon. As stated by Plaintiff, "... Defendants' theory of this case, the existence *vel non* of sources, the reliability of those sources and the precise nature of the information, if any, supplied by them lie at the very heart of Plaintiff's burden of proof."

The record clearly supports Plaintiff's claim that he has undertaken an exhaustive discovery effort to determine the identity of Defendants' confidential sources without obtaining the information directly from Defendants. In this regard, Plaintiff has taken numerous depositions but to date has been unable to identify the confidential sources utilized by Defendants.

Defendants respond with the equally strong argument that the identities of the confidential sources utilized by Defendants ROSS and SILVERMAN in the preparation and telecast of the broadcasts at issue are protected by the facially absolute privilege set forth in Nevada Revised Statute § 49.-275,[1] (commonly referred to as the Nevada shield law), and by a qualified privilege against disclosure of confidential sources fashioned by the Courts under the First Amendment to the United States Constitution.

Defendants essentially argue that the foregoing privileges constitute legislative and judicial recognition of the strong public interest in the maintenance of a vigorous and independent press capable of partici-

---

1. *Privilege for news media.* No reporter, former reporter or editorial employee of any newspaper, periodical or press association or employee of any radio or television station may be required to disclose any published or unpublished information obtained or prepared by such person in such person's professional capacity in gathering, receiving or processing information for communication to the public, or the source of any information procured or obtained by such person, in any legal proceedings, trial or investigation:

1. Before any court, grand jury, coroner's inquest, jury or any officer thereof.
2. Before the legislature or any committee thereof.
3. Before any department agency or commission of the state.
4. Before any local governing body or committee thereof, or any officer of a local government.
N.R.S. 49.275.

pating in unfettered debate over controversial issues. Defendants contend that compelled disclosure of confidential sources would severely impair a journalist's ability to obtain information and would inevitably undermine freedom of the press. *United States v. Burke,* 700 F.2d 70, 77 (2nd Cir. 1983); *Carey v. Hume,* 492 F.2d 631, 639 (D.C.Cir.1974).

The Court is called upon to reconcile the conflict between Plaintiff's legitimate interest in attempting to meet his burden of proof as a public figure in a defamation action and the equally legitimate interests of Defendants in protecting the confidentiality of their sources and thereby presumably promoting the viability of a free press.

Until recently, Courts rejected the argument that under the First Amendment their existed a qualified journalist privilege to protect forced disclosure of confidential sources. As a result, the Courts generally ordered disclosure of confidential news sources in civil libel actions. *Garland v. Torre,* 259 F.2d 545 (2nd Cir.1958). More recently, however, most Federal circuits have recognized a journalist's qualified First Amendment privilege to refuse to disclose confidential sources under certain circumstances. *Bruno v. Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583 (1st Cir.1980); *Baker v. F & F Investment,* 470 F.2d 778 (2nd Cir.1972); *Riley v. City of Chester,* 612 F.2d 708 (3rd Cir.1979); *United States v. Steelhammer,* 561 F.2d 539 (4th Cir.1977); *Miller v. Transamerican Press, Inc.,* 621 F.2d 721 (5th Cir.1980); *Cervantes v. Time, Inc.,* 464 F.2d 986, (8th Cir.1972); *Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433 (10th Cir.1977) and *Zerilli v. Smith,* 656 F.2d 705 (D.C.Cir.1981).[2]

The Ninth Circuit Court of Appeals first recognized a journalist's qualified First Amendment privilege to protect the confidentiality of news sources in *Farr v. Pitchess,* 522 F.2d 464 (9th Cir.1975). In *Farr v. Pitchess, supra,* the Court considered a Petition for Habeas Corpus filed by a newsman who had been incarcerated for contempt for refusal to obey an Order of the State trial court to divulge the identities of suppliers of certain information relating to the widely-publicized Los Angeles trial of Charles Manson. The Federal District Court before which the Petition for Writ of Habeas Corpus was originally heard dismissed the Petition. On Appeal, the Ninth Circuit upheld the lower court's dismissal finding that Petitioner Farr was not constitutionally protected in his refusal to identify sources who had violated a proper order of the State trial court. However, the Court in *Farr v. Pitchess, supra* at 467–68, recognized a qualified First Amendment privilege under which journalists may under certain circumstances be permitted to maintain the confidentiality of sources of information:

> The pertinent language of the First Amendment in the Constitution of the United States provides: "Congress shall make no law[s] ... abridging the freedom of speech, or of the press: ...". Until very recent times, it was not seriously thought by most that this provision of the First Amendment gave any personal right to a newspaper reporter to keep confidential his sources of information. Historically, freedom of the press, as guaranteed by the Constitution, meant absence of restraint upon publication usually prior to publication, i.e., censorship. *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *Garland v. Torre,* 259 F.2d 545 (2nd Cir. 1958).

> A change has been in the making in more recent times. Several states have enacted legislation aimed at carving out a privilege against disclosure of news sources. The Congress of the United States has flirted with such legislation. More in point, the Supreme Court of the United States has considered the question and appears to have fashioned at least a partial First Amendment shield

---

**2.** For a comprehensive list of cases which have considered the issue of access to a journalist's confidential sources, see footnote 23 to *Andrews v. Eli Lilly & Co., Inc.,* 97 F.R.D. 494, 501 (N.D. Ill.1983).

available to newsmen who are subjected to various demands to divulge the source of confidentially secured information. *Branzburg v. Hayes, In Re Pappas,* and *United States v. Caldwell,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), form a trilogy of cases reported together and generally hereafter terminated *Branzburg,* wherein the Supreme Court faced the question of the right of the grand jury to require disclosure by newsmen. Justice White wrote for four justices and the short concurrence of Justice Powell was needed to obtain a plurality. The *Branzburg* Court dealt precisely with the First Amendment free press provision as it affected testimony sought to be produced before a grand jury. However, the opinion appears to reach broadly enough to be applied to other civil or criminal judicial proceedings as well. Recent cases have so held. *Carey v. Hume,* 160 U.S.App.D.C. 365, 492 F.2d 631 (1974), *petition for writ of certiorari dismissed pursuant to Rule 60,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974); *United States v. Liddy,* 155 U.S. App.D.C. 382, 478 F.2d 586 (1972); cf. *Bursey v. United States,* 466 F.2d 1059 (9th Cir.1972) at 1090, *et seq., on motion for rehearing.*

It is clear that *Branzburg* recognizes some First Amendment protection of news sources. The language of the case likewise indicates that the privilege is a limited or conditional one. The precise holding of *Branzburg* subordinated the right of the newsmen to keep secret a source of information in face of the more compelling requirement that a grand jury be able to secure factual data relating to its investigation of serious criminal conduct.

The application of the *Branzburg* holding to non-grand jury cases seems to require that the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts and a balance struck to determine where lies the paramount interest.

Although the balancing tests articulated by the various Circuits are not uniform, many have found that in some cases a civil Plaintiff's need for the identity of a newsman's confidential source outweighs the First Amendment interest in maintaining the confidentiality of that source. This result has been particularly prevalent in libel actions where the plaintiff is a public figure who must meet the "actual malice" standard enunciated in *New York Times v. Sullivan, supra,* and who can demonstrate that he cannot otherwise meet that burden without disclosure of the journalist's confidential source. The balance leans even more in favor of such a plaintiff where the journalist claiming the privilege is a party defendant. See *Miller v. Transamerican Press, Inc., supra; DeRoburt v. Gannett Co., Inc.,* 507 F.Supp. 880 (D.Hawaii, 1981); *Carey v. Hume, supra; Bruno & Stillman Co., Inc. v. Globe Newspaper Co., supra;* and *Silkwood v. Kerr-McGee Corp., supra.*

Were the Court to consider Plaintiff's Motion to Compel solely on the basis of Defendant's claim of qualified First Amendment privilege against disclosure of confidential sources, the Court would find in balancing the circumstances of this particular case that Defendant's claim of qualified privilege is overriden by Plaintiff's demonstrated specific need for the evidence.

■ Specifically, the Court finds that the identities of the confidential sources upon which Defendants ROSS and SILVERMAN relied in preparing the broadcasts at issue are highly relevant and that Plaintiff has a compelling need for such information in light of the heavy burden of proof Plaintiff bears as a "public figure" in this litigation. Additionally, the Court finds that Plaintiff has effectively exhausted alternative means of learning the identity of the confidential sources relied upon by Defendants ROSS and SILVERMAN by the numerous depositions taken and reflected in the record herein. Under the circumstances, the Court would order disclosure of the confidential sources. *Garland v. Torre,*

*supra; Miller v. Transamerican Press, Inc., supra; Carey v. Hume, supra;* and *DeRoburt v. Gannett Co., Inc., supra.*

However, the Court's consideration of Plaintiff's Motion cannot end with an evaluation of Defendants' assertion of a qualified journalist's privilege under the First Amendment. Defendants have also asserted a claim that the confidential sources of their information are immune from discovery under the Nevada shield law N.R.S. § 49.275.

Defendants correctly argue that because this is a diversity action and the issue before the Court is one of privilege, the Court must look to the Federal Rules of Evidence for guidance. *Steaks Unlimited, Inc., v. Deaner,* 623 F.2d 264 (3rd Cir.1980); *Samuelson v. Susen,* 576 F.2d 546 (3rd Cir. 1978); *Cervantes v. Time, Inc., supra;* and *Riley v. City of Chester, supra.*

Rule 501 of the Federal Rules of Evidence provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. *However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.* (Emphasis supplied.)

As stated in *Mazzella v. Philadelphia Newspapers, Inc.,* 479 F.Supp. 523, 526 (E.D.N.Y.1979), Rule 501 makes it clear that the question of privilege is governed by State law, which in the first instance means the law of the State in which the forum federal court sits.

This of course, is the same result that would be reached by application of *Erie* principals, *Erie R. Company v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1938), to a state created privilege conferring substantive rights beyond federal procedural rules, see *Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 555–56, n. 2 (2nd Cir.1967), and is consistent with the legislative intent underlying Rule 501. See H.R.Rep. No. 650, 93rd Cong., 1st Sess. 9 (1973), U.S.Code Cong. & Admin.News 1974, p. 7051; *Samuelson v. Susen, supra,* 576 F.2d at 550.

Accordingly, in determining which State's law of privilege applies, the Court must look to Nevada's conflict of law rules. *Klaxon v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Fleury v. Harper and Row, Publishers, Inc.,* 698 F.2d 1022, 1025 (9th Cir.1983); and *Samuelson v. Susen, supra.* In accordance with the decision of the Ninth Circuit Court of Appeals in *Hanley v. Tribune Publishing Co.,* 527 F.2d 68 (9th Cir.1975), the Court finds that Nevada Courts would utilize the "interest analysis" test to determine the law of privilege applicable in this action.

As the district court recognized, under choice of law principles the respective substantive rules under consideration traditionally compete on the basis of the interests of the respective states with regard to the particular controversy. *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal. Rptr. 31, 432 P.2d 727 (1967); *Casey v. Manson Construction and Engineering Co.,* 247 Or. 274, 428 P.2d 898 (1967). In the case of tort actions, relevant factors include the nature of the wrong that is alleged; the place where the harm was actually suffered; the place where the extent of injury can best be appraised. Restatement of the Law (Second), Conflict of Laws § 145 and Comments thereto. In cases of defamation, these factors normally would call for application of the law of the plaintiff's domicil. Restatement of the Law (Second), Conflict of Laws § 150(2). Ordinarily, it is there, if anywhere, that plaintiff can be said to enjoy a reputation; and there, if any-

where, that reputation would suffer injury by the accused writing. Restatement of the Law (Second), Conflict of Laws § 150, Comment e reads in part:

Rules of defamation are designed to protect a person's interest in his reputation. When there has been publication in two or more states of an aggregate communication claimed to be defamatory, at least most issues involving the tort should be determined * * by the local law of the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation. This will usually be the state of the plaintiff's domicil if the matter complained of has there been published.

We conclude that Nevada would apply the general conflicts rule that the law of the plaintiff's domicil should control, and accordingly that the substantive law of Nevada, as of the date of publication, should be applied to this action.

*Hanley v. Tribune Publishing Co., supra* at 70.

■ Plaintiff NEWTON is a citizen of Nevada, and Nevada is the forum State selected by Plaintiff and in which the action is pending. Additionally, Nevada is the location of the subject matter of significant portions of the broadcasts at issue and is a primary focus of Plaintiff's claim of damage to reputation. Under the circumstances, the Court finds that Nevada Courts would conclude under the applicable choice of law principles that Nevada has the greatest concern with the question of the "privilege of news media" because of its contact with and interest in the events at issue in this case. Such a result is entirely consistent with the Restatement Second, Conflict of Laws cited with approval in *Hanley v. Tribune Publishing Co., supra.*[3]

■ Applying the Nevada shield law, N.R.S. 49.275, to Plaintiff's Motion to Compel leads to the inescapable conclusion that Defendants ROSS and SILVERMAN need not disclose the names or addresses of the confidential sources upon which said Defendants relied in preparing the broadcast news segments at issue in this case, regardless of where the communications between Defendants ROSS and SILVERMAN and their sources occurred. Indeed, if there is anything the parties to this litigation agree on, (and there is not much), it is that Nevada's shield law provides the broadest protection to news media sources of any State shield law enacted in the United States.

■ Of the approximately 26 States that have adopted shield laws, none is more encompassing or more protective to the press than is Nevada's. Clearly the statute provides no exception for libel suits from its coverage, notwithstanding the fact that several States have enacted provisions in their shield laws which render them either

---

**3.** Restatement Second, Conflict of Law § 150 provides in pertinent part:

*Multistate Defamation*

(1) The rights and liabilities that arise from defamatory matters in any one edition of a book or newspaper, or any one broadcast over radio or television, exhibition of a motion picture, or similar aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles states in § 6.

(2) When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state *where the person was domiciled at the time,* if the matter complained of was published in that state. (Emphasis added.)

The Restatement of Law (Second) § 6 (1971) provides:

*Choice-of-Law Principles*

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

inapplicable or of limited applicability in defamation actions. Although the Court can envision circumstances under which Nevada's shield law would come into conflict with individual constitutional rights of litigants in a criminal prosecution, the Court finds no such constitutional infirmity with regard to the application of Nevada's shield law in the instant action.

■ The Court fully recognizes that application of Nevada's shield law may significantly impair Plaintiff's ability to meet his burden of proving "actual malice" under *New York Times v. Sullivan, supra.* The Court appreciates as well that application of Nevada's shield law deprives Plaintiff of discovery he would be entitled to take in a State without such a near absolute press privilege statute. However, the Nevada legislature, in granting almost absolute protection to a journalist from disclosure of his confidential sources, has made a decision to favor the public's interest in access to information over an individual's interest in vindicating his reputation in a defamation action. Reconciling such conflicting interests is an appropriate function of a legislative body.

In *Mazzella v. Philadelphia Newspapers, Inc., supra* at 528, the Court construed the Pennsylvania shield law which is substantially similar to that found in Nevada. There the Court focused on the issue succinctly when it stated:

Simply put, while an individual's interest in his reputation is a basic concern, *Herbert v. Lando, supra,* [441 U.S. 153] 99 S.Ct. [1635] at 1645 [60 L.Ed.2d 115 (1979)], its reflection in the laws of defamation is solely a matter of State law. See *Gertz v. Robert Welch, Inc., supra,* 418 U.S. [323] at 342, 94 S.Ct. 2997 [3008, 41 L.Ed.2d 789 (1974)]. A plaintiff's "interest in reputation is simply one of a number which the State may provide against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damage actions." *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Paul v. Davis,* the Court held that the interest in reputation asserted in a defamation action is neither liberty nor property guaranteed against State deprivation without due process of law and thus an allegation of injury to reputation, standing alone, fails to state a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment where the defamation is by a State official. Since the State has created the cause of action and hence has substantial latitude in enforcing the remedy, *Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 346–47, 94 S.Ct. 2997 [at 3010], it can limit, modify or perhaps take it away through the operation of testimonial privileges, absent any claim of constitutional deprivation.

■ Application of the law of privilege which Nevada's Courts would apply in a defamation action is entirely consistent with Congress' goal of effectuating State's substantive rights, laws and policies where there is no substantial federal interest. Such an approach recognizes the fact that a forum State's choice of law rules may reflect important policy underpinnings of its own law and, within the limits permitted by the Constitution, leaves to a State the right to pursue local policies. The Court finds that any contrary interpretation of Rule 501 would be inconsistent with the prevailing view of federalism on the allegation of lawmaking authority in diversity cases which Congress seemed intent upon preserving when it enacted the rule. *Samuelson v. Susen, supra,* at 549–551.

■ The Court must reject Plaintiff's argument that Defendants ROSS and SILVERMAN, as employees of a national television network (NBC), do not fall within the category of persons who may invoke the protection of the Nevada shield law, N.R.S. § 49.275. The Court specifically finds that the term "television station" as used in N.R.S. § 49.275 includes employees of a national television network such as Defendant NBC. To rule otherwise would torture the generic definition of "television station" and would defeat the legislative purpose underlying Nevada's shield law as reflected in the Nevada Judiciary Committee

Minutes of March 4, 1969, which are set forth at page 32 of Defendant's Opposition (# 735).

■ The Court must similarly reject Plaintiff's argument that Defendants have waived the privilege conferred by N.R.S. § 49.275, by publishing a "significant part" of the communications with their alleged sources. Essentially, Plaintiff argues that by attributing certain statements to reliable confidential sources in the broadcasts at issue, Defendants ROSS and SILVERMAN effectively waived the protections of N.R.S. § 49.275. Plaintiff urges the Court to draw no distinction between disclosure of the substance of conversations with confidential sources and disclosure of the identities of said confidential sources. This the Court cannot do.

Nevada Revised Statute § 49.385, entitled *Waiver of Privilege by Voluntary Disclosure*, provides as follows:

1. A person upon whom these rules confer a privilege against disclosure of a confidential matter waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter.

2. This section does not apply if the disclosure itself is a privileged communication.

In *Newburn v. Howard Hughes Medical Institute*, 95 Nev. 368, 594 P.2d 1146 (1979), the Nevada Supreme Court had the opportunity to construe Nevada's waiver statute, N.R.S. § 49.385, in relation to Nevada's shield law, N.R.S. § 49.275. In *Newburn, supra,* reporter Newburn obtained information regarding the possible existence of a will left by Howard Hughes. Thereafter, reporter Newburn approached State District Court Judge Keith Hayes, who had been handling certain matters pertaining to the Hughes Estate, and requested his advice regarding materials Newburn had observed which suggested the existence of a valid Hughes will. On Judge Hayes recommendation, Newburn met on April 6, 1978, with representatives of the Hughes Estate at which reporter Newburn revealed conversations he had had with identified individuals concerning Hughes testamentary intent, and documents he had witnessed in connection therewith. The meeting of April 6, 1978, was tape-recorded with the consent of all present.

Thereafter, when reporter Newburn appeared for a deposition and was ordered by the Court to answer all questions relating to matters which he had disclosed during the April 6, 1978, meeting with representatives of the Hughes Estate, reporter Newburn invoked the Reporter's Privilege, under the Nevada shield law, N.R.S. § 49.275. The State District Court found that the meeting of April 6, 1978, did not constitute "investigative reporting" at which reporter Newburn received information, but rather constituted a voluntary disclosure of information by reporter Newburn. The Court found that in accordance with N.R.S. § 49.385, reporter Newburn had waived any claim of reporter's privilege he may have had under N.R.S. § 49.015.

On appeal, the Nevada Supreme Court rejected Appellant Newburn's argument that his voluntary disclosure of information on April 6, 1978, was itself a privileged communication within the meaning of N.R.S. § 49.385(2), and upheld the finding of the District Court.

The Court finds that the *Newburn* case cannot be read to stand for the proposition that the very broadcasts at issue in this case constitute a waiver of Defendant's privilege under Nevada's shield law, N.R.S. § 49.275, protecting the identity of the confidential sources of Defendants ROSS and SILVERMAN. The broadcast of the substance of conversations with confidential sources does not constitute a waiver of the privilege against the disclosure of the identities of said sources.

In *Mazzella v. Philadelphia Newspapers, Inc., supra,* the Court denied a similar motion by a public figure plaintiff to compel disclosure of confidential sources by defendant journalists. However, in so ruling, the *Mazzella* Court fashioned an additional remedy intended to ensure a fair

**532**

and reasonable accommodation of the competing interests of the public figure plaintiff and journalist defendant. In *Mazzella, supra,* at page 529, n. 3, the Court stated as follows:

> This holding, however, is accompanied by the following caveat. Since the function of all trials is to establish the truth, and since our decision in this case is predicated upon the assumption that Pennsylvania's shield law was enacted primarily to protect confidential communications, defendants shall be deemed to have waived the law's protections should they choose to prove their defense through witnesses whose identities are protected from disclosure by this order. Thus, the court would be obliged to grant a continuance during trial sufficient to permit plaintiffs to take discovery of any such witness and conduct any further investigation should that be required. As Judge Friendly has said in another context, "deemed persons have rights too," *Buckley v. New York Post Corporation,* 373 F.2d 175, 180 (2d Cir.1967).
>
> While this decision imposes upon plaintiffs a not insignificant burden of making out a prima facie case of libel independent of evidence obtained through the mouths of defendants' confidential sources, discovery of these sources during trial—if defendants choose to call them—should adequately protect plaintiffs' interest in having a full opportunity to test the merits of the defense case. This opportunity—or limitation of defendants' proof upon their renewed assertion of privilege—is a reasonable accommodation of the competing interests and finds support in the recent New York case of *Greenberg v. CBS, Inc., supra* [69 A.D.2d 693] 419 N.Y.S.2d [988] at 997.

■ The Court finds that the remedy fashioned in *Mazzella v. Philadelphia Newspapers, Inc., supra,* is equally appropriate in this case. Therefore, the Court denies Plaintiff's Motion to Compel Disclosure of Confidential Sources or, Alternatively, to Preclude Reliance Upon Such Sources at Trial (# 728), and in so doing

specifically adopts the caveat set forth in note 3 to the Opinion in *Mazzella v. Philadelphia Newspapers, Inc., supra,* at 529, as set forth above.

IT IS SO ORDERED.