Gene H. SAMUELSON, M. D., Appellant,

v.

Anthony F. SUSEN, M. D., and Peter J. Jannetta, M. D.

No. 77–1806.

United States Court of Appeals, Third Circuit.

Argued Feb. 15, 1978.

Decided April 21, 1978.

Joseph D. Shein, Shein & Brookman, Philadelphia, Pa., Louise Reiber Malakoff, Berger, Kapetan & Malakoff, Pittsburgh, Pa., for appellant.

Henry E. Rea, Jr., Brandt, Milnes, Rea & Malone, Pittsburgh, Pa., for appellees.

Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This is an approved appeal in a diversity action from an order of the district court limiting discovery. 28 U.S.C. § 1292(b).

Plaintiff, Dr. Gene H. Samuelson, a resident of Steubenville, Ohio, and a neurosurgeon, asserted a claim based upon defamation and tortious interference with business and professional relationships. He alleged that defendants, Drs. Anthony F. Susen and Peter J. Jannetta, published defamatory statements, either by mail, orally or both, to certain physicians at Ohio Valley Hospital, and other persons, including physicians at St. John Medical Center and Harrison Community Hospital (all in the Steubenville area) and at Weirton General Hospital, Weirton, West Virginia. He seeks damages based on his claim that defendants' conduct has resulted in his being refused privileges at two Ohio hospitals and his staff privileges severely limited at the remaining hospitals.

During the course of discovery, plaintiff sought to depose six physicians and administrators of two Steubenville, Ohio hospitals. All of the proposed deponents (appellees) filed motions for protective orders, which were granted by the district court on the basis of Ohio Revised Code § 2305.251, which provides:

> Proceedings and records of all review committees described in section 2305.25 of the Revised Code [1] shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review by such committee. No person within attendance at a meeting of such committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any finding, recommendation, evaluation, opinion or other action of such committee or member thereof. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of such committee nor should any person testify-

---

1. Section 2305.25 provides in pertinent part:
   No member or employee of a utilization review committee . . . shall be deemed liable in damages to any person for any action taken or recommendation made within the scope of the functions of such committee . . . . . .

This section shall also apply to any member or employee of a . . . hospital board or committee reviewing professional qualifications or activities of its medical staff or applicants for admission thereto.

ing before such committee or who is any member of such committee be prevented from testifying as to matters within his knowledge, but the witness cannot be asked about his testimony before such committee or opinion formed by him as a result of such committee hearing.

The district court, on April 18, 1977 entered an order designating the following as controlling questions of law pursuant to 28 U.S.C. § 1292(b):

(1) Do conflicts of law principles require the application of Ohio law to the instant matter?

(2) Are §§ 2305.25 and 2305.251 of the Ohio Revised Code retrospective in application?

(3) Do those Ohio statutory provisions prohibit discovery of the publication of allegedly defamatory statements made within the context of committee review of an application for hospital staff privileges?

(4) If the Ohio statutory provisions do prohibit discovery with regard to alleged defamation occurring in the context of committee review of an application for staff privileges, are those provisions unconstitutional?

## I.

The district court held that, "consistent with Restatement 2d, *Conflict of Laws* § 149, and with Fed.R.Evid. 501, we will look to the laws of Ohio." We note initially that the section of the cited Restatement deals with the substantive law of defamation. It does not pertain to evidentiary matters and hence has no applicability to the resolution of the issues before us.[2]

2. Restatement 2d, *Conflict of Laws* § 139 is concerned specifically with privileged communications.

3. Fed. Rule of Evidence 501 states: Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the

■ We turn then to Rule 501 of the Federal Rules of Evidence,[3] which was applied by the district court. Plaintiff first argues that Rule 501 is not applicable since the statute enacting it was to take effect on July 1, 1975, subsequent to the initiation of this action. However, the statute enacting the Federal Rules of Evidence states that the Rules [including 501] should apply to pending cases where practicable and not unjust. P.L. 93–545, § 1, Jan. 2, 1975, 88 Stat. 1926. The application of Rule 501 to these proceedings is clearly feasible. Its application, in our view, would work no injustice, since the same result would likely have obtained under evidentiary principles formerly applied by the federal courts. They required these courts to use "the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held." Former Fed.R.Civ.P. 43(a). We therefore conclude that Rule 501 is applicable to this case.

Rule 501 provides that with respect to state issues in "civil actions and proceedings" any privilege "shall be determined in accordance with State law." However, that Rule provides no explicit guidance as to which state's law regarding privilege is to be applied in a diversity case.

■ Plaintiff argues that under Rule 501 a federal court must apply the privilege law of the forum, whether or not state courts of the forum would apply their own privilege law. We cannot agree. We believe Rule 501 requires a district court exercising diversity jurisdiction to apply the law of privilege which would be applied by the courts of the state in which it sits.

Prior to the enactment of Rule 501, federal court decisions had determined that in civil actions and proceedings governed by

principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

*Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), state created privileges conferred substantive rights beyond regulation by federal procedural rules. See *Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 555–556 n.2 (2d Cir. 1967). In the form originally prepared, the Federal Rules of Evidence would not have required federal courts to recognize privileges created by state law in civil actions and proceedings governed by *Erie.* Preliminary Draft of Proposed Rules of Evidence for the United States Courts and Magistrates, 46 F.R.D. 161 (1969).

The House of Representatives amended the proposed rules to require the application of state privilege law in cases governed by *Erie.* (It was the House amendment that was eventually enacted into law as Rule 501). The House supported its position with the following contentions: (1) privilege rules are and should continue to be considered substantive for *Erie* purposes; (2) privilege rules are outcome determinative; (3) where state law supplies the rule of decision, state rules of privilege should be applied because there is no federal interest substantial enough to justify departure from state policy; and (4) state policy regarding privilege should not be thwarted merely because of diversity jurisdiction, a situation which, if allowed, would encourage forum shopping. H.R.Rep. No. 650, 93rd Cong., 1st Sess. 9 (1973).

A federal court's application of the law of privilege which the forum states' courts would apply in cases like the instant one, seems to us to be consistent with Congress' goal of effectuating state substantive rights, laws and policies in controversies where there is no substantial federal interest. Such an approach furthers Congress' goal of preserving the domain of state privilege law in diversity cases by achieving outcome identity between state and federal courts of the forum state on choice of law, thus discouraging forum shopping. Such an approach also takes cognizance of the fact that a forum state's choice-of-law rules may reflect important policy underpinnings of its own law and are an integral part of it. As the Supreme Court has pointed out, our federal system:

leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies. . . . It is not for the federal courts to thwart such local policies by enforcing an independent "general law" of conflict of laws. Subject only to review by this Court on any federal question that may arise, Delaware is free to determine whether a given matter is to be governed by the law of the forum or some other law. . . . *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–497, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941).

We are mindful of the fact that in *Klaxon* the Supreme Court was in effect interpreting the reference in the Rules of Decision Act to "the laws of the several states . . . in cases where they 'apply' to include a forum state's choice-of-law rules. As one commentator has pointed out, "[t]he reference in that Act to the laws of the several states . . . in cases where they apply is no less ambiguous in terms of horizontal choice of law than the references to 'State law' in the Federal Rules of Evidence." Wellborn, *The Federal Rules of Evidence and the Application of State Law in Federal Courts,* 55 Texas L.Rev. 371, 446 (1977).

The interpretation of "State law" urged upon us by plaintiff would prevent the application of all of a forum state's law, including its choice-of-law rules. Such a denial would be antithetical to one of the primary goals of Rule 501, the recognition that where states have created rights, the federal courts should apply the same rules of law to those rights which the states themselves would apply. Moreover, to require a federal court to ignore some of a state's choice-of-law rules, as plaintiff's interpretation of "State law" in Rule 501 would do, would obviously invite forum shopping in direct contradiction of one of the aims of Rule 501.

We believe our interpretation of the meaning of "State law" in the second sentence of Rule 501 to be the most consistent

with the prevailing view of federalism on the allocation of lawmaking authority in diversity cases—a view Congress seemed intent upon preserving when it enacted the measure.

■ We thus look to Pennsylvania's conflict-of-laws rules to determine whether Ohio's or Pennsylvania's privilege law applies. We do so even though, it might be argued that the law, of the two jurisdictions, controlling the resolution of the privilege question is essentially the same.

■ There are no precise Pennsylvania precedents to guide us as to how Pennsylvania courts would rule with respect to the questions before us: consequently, we must predict how Pennsylvania courts would rule. We do know that Pennsylvania has, generally speaking, adopted the "interest analysis" approach to conflict-of-law questions. *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964); *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970). Under that approach "we should apply the law of the predominantly concerned jurisdiction, measuring the depth and breadth of that concern by the relevant contacts each affected jurisdiction had with . . . 'the policies and interests underlying the particular issue before the court'." *Suchomajcz v. Hummel Chemical Company*, 524 F.2d 19, 23 (3d Cir. 1975).

■ Here the review committee proceedings were held in Ohio. The participants were Ohio residents. The proceedings were those of an Ohio body seeking to effectuate policies respecting an Ohio physician's use of Ohio medical facilities. Presumably, the proceedings were for the protection of Ohio residents. Under all these circumstances, it seems clear that the district court was justified in concluding that Ohio had the more

"significant relationship" to the dispute. It was therefore warranted in prophesying that the Pennsylvania courts would apply Ohio law to the resolution of the conflicts question, particularly since both states have adopted a non-disclosure policy with respect to medical review committee proceedings.[4]

The approach of applying the law of the jurisdiction with the more significant relationship to the dispute is also consistent with that of the Restatement 2d, *Conflict of Laws* § 139(2).

## II.

The district court, concluding that Ohio law should apply, granted deponents' motions for protective orders under O.R.C. § 2305.251. Plaintiff contends that it was erroneous to apply O.R.C. § 2305.251 in this litigation because it did not take effect until July 28, 1975, subsequent to plaintiff's February 21, 1975 filing of his complaint in this action.

■ Article II, Section 28 of the Ohio Constitution denies to the General Assembly the power to enact retroactive legislation. Ohio courts, however, have held that this inhibition applies only to statutes affecting substantive rights, and has no reference to laws of a remedial or procedural nature. As the Ohio Supreme Court has declared "[l]aws of a remedial nature are applicable to any proceedings conducted after the adoption of such laws (citations omitted)." *Kilbreth v. Rudy*, 16 Ohio St.2d 70, 72, 242 N.E.2d 658, 660 (1968).

It must then be decided whether O.R.C. § 2305.251 is remedial and procedural or substantive. No Ohio state court has, to date, ruled on the retroactive effect of § 2305.251.[5] The federal district court for

---

4. Compare O.R.C. § 2305.251 with Pennsylvania Peer Review Protection Act, 63 P.S. § 425.1 *et seq.*

5. Plaintiff cites three Ohio lower court opinions in support of his argument that the section of the Ohio Code here involved should not be applied retroactively, *Young v. Alberts*, 342 N.E.2d 700 (Court of Common Pleas, Hamilton Co. 1975); *Grayley v. Satayatham*, 343 N.E.2d 832, 838 -39 (Court of Common Pleas, Cuyaho-

ga Co. 1976) and *Simon v. St. Elizabeth Medical Center*, 355 N.E.2d 903, 909 (Court of Common Pleas, Montgomery Co. 1976). Those cases all deal with provisions of the so-called Malpractice Act which affect substantive rights. To the extent some of the language of these cases can be said to apply to the rights here involved, we do not consider such dicta binding or persuasive, since § 2305.251 affects essentially matters of procedure.

the Northern District of Ohio has ruled in an unpublished opinion that § 2305.251 applies retroactively. *Vrable v. Gerace*, No. 75–47 (N.D.Ohio Oct. 28, 1975).

Obviously, O.R.C. § 2305.251 has a non-procedural purpose. It has both procedural and nonprocedural aspects. We are reminded that "neither 'substance' nor 'procedure' represents the same invariants. Each implies different variables depending upon the particular problem for which it is used." *Guaranty Trust Co. v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945).

In the context of these proceedings, § 2305.251 works to keep possibly relevant and otherwise admissible evidence from the trier of facts, and is thus clearly procedural. It does not impair the substantive law of defamation, or the substantive right of the plaintiff to bring a cause of action thereon. Therefore, it may be invoked by these deponents even though this action was commenced prior to the effective date of the statute.

### III.

Plaintiff contends that the district court erred in applying O.R.C. § 2305.251 to bar discovery in a defamation case because that section was intended to bar discovery of review committee proceedings in litigation where malpractice is involved. Plaintiff points out that O.R.C. § 2305.251 was passed as part of the Ohio Malpractice Act, in response to a medical malpractice "crisis."

Plaintiff argues that privilege statutes like O.R.C. § 2305.251 cannot be applied "against a physician whose opportunity to practice is being restrained." In support of this argument, plaintiff sets forth what he believes to be the purpose and intent of O.R.C. § 2305.251 and concludes that such purpose would not be furthered by granting deponents the protection of O.R.C. § 2305.251 in this case. We conclude, however, that O.R.C. § 2305.251 is an explicit bar to the discovery of the proceedings of an Ohio committee reviewing an application for hospital staff privileges. Section 2305.251 defines a review committee as any committee "reviewing professional qualifications or activities." Section 2305.251 states that "[p]roceedings and records of all review committees described in Section 2305.251 of the Revised Code shall be held in confidence and shall not be subject to discovery . . ." and that "[n]o person within attendance at a meeting of such committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of such committee. . . ." Since deponents in this case were members of committees reviewing plaintiff's application for staff privileges at two Ohio hospitals, they fall squarely within the protection of these sections.

Given the plain and unambiguous language of O.R.C. §§ 2305.25 and 2305.251, it would be improper for us to consider the arguments of plaintiff for a particular interpretation of them based upon extrinsic circumstances. It is well settled that:

. . . when words are free from doubt they must be taken as the final expression of the legislative intent, and are not to be added to or subtracted from by considerations drawn from titles or designating names . . . or from any extraneous source. In other words, the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent. *Caminetti v. United States*, 242 U.S. 470, 490, 37 S.Ct. 192, 196, 61 L.Ed. 442 (1917).

### IV.

Plaintiff asserts that O.R.C. § 2305.251 deprives him of material necessary to establish his claims, effectively denying him access to the courts in violation of his Fifth and Fourteenth Amendments due process rights. Plaintiff argues that

there is no compelling state interest served by the application of O.R.C. § 2305.251 sufficient to overrule his interest in obtaining information about the review committee proceedings.

The Ohio legislature has, however, concluded, presumably in that state's best interest, that the deliberations of medical review committees should be privileged. As one court has declared "[s]tate legislatures create privileges because a particular relationship is considered so valuable to society that it should be fostered by preserving the confidentiality of the relationship even though evidence which might aid in the quest for truth will be lost." *Baylor v. Mading-Dugan Drug Company*, 57 F.R.D. 509, 511 (N.D.Illinois 1972).

No doubt the statutory provisions affect the manner in which plaintiff may develop evidence to support his defamation claim. Plaintiff is not, however, foreclosed from prosecuting his claim with other evidence, both direct and circumstantial.

The Ohio Supreme Court has delineated the requirements for a successful defamation action. In *Hahn v. Kotten*, 43 Ohio St.2d 237, 331 N.E.2d 713 (1975), it stated:

"[i]n an action for defamation, the plaintiff's prima facie case is made out when he has established a publication to a third person for which defendant is responsible, the recipients' understanding of the defamatory meaning, and its actionable character." *Id.* at 243, 331 N.E.2d at 718 (footnote to Restatement (Second) of Torts § 613 comment (d) (1976)).

Plaintiff is not precluded from establishing the necessary causal connection between the defamatory matter and his injury by circumstantial evidence or by evidence from deponents which falls outside the purview of the O.R.C. § 2305.251. We agree with the statement of the trial judge (in his Memorandum Order of January 10, 1977) that "[p]laintiff's argument that he is being deprived access to the courts is attenuated." Finding no due process violation of

the character asserted by plaintiff, we conclude that full effect should be given to O.R.C. § 2305.251.

The protective order of the district court dated November 3, 1976, interpreted in its memorandum order denying a motion for reconsideration will be affirmed.