**Deborah Leah HILL, Plaintiff,**

v.

**Paul S. SANDHU, M.D.; Coffeyville Doctors' Clinic, P.A.; Coffeyville Regional Medical Center, Defendants.**

No. 89–1338–C.

United States District Court,
D. Kansas.

Jan. 24, 1990.

Richard D. Cordry, Law Offices of Richard D. Cordry, Wichita, Kan., for plaintiff.

David R. Erickson and Diana D. Moore, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, Kan., for defendant Coffeyville Regional Medical Center.

David J. Morgan, Hershberger, Patterson, Jones & Roth, Wichita, Kan., for defendants Coffeyville Doctors' Clinic, P.A. and Paul S. Sandhu.

MEMORANDUM AND ORDER

JOHN B. WOOLEY, United States Magistrate.

The issue before the court is whether the Kansas Health Care and Peer Review statute, Kan.Stat.Ann. § 65–4915 *et seq.*, protects, as privileged, documents and information, submitted to a hospital by a physician for the determination of staff privileges. For the reasons hereafter stated, the court finds that it does not.

On September 11, 1989, plaintiff propounded her First Set of Interrogatories and First Request for Production to the defendant Coffeyville Regional Medical Center. At issue is Request for Production No. 10 which seeks:

Any and all documents concerning staff privileges granted to defendant Sandhu, including his first application to defendant institution, any renewals and reappointments, any DEA and DPS controlled substance regulation forms, medical privileges applied for, physician's permits and letters of reference, and any information supplied by defendant Sandhu to defendant institution in connection with said application.

The defendant Medical Center objected to request No. 10, and the present Motion to Compel (Dkt. # 36, filed November 16, 1989) ensued. The issue is fully briefed. *See* Dkt. Nos. 37, 40 and 48.

The instant cause is a medical malpractice action based on state law. Federal jurisdiction is based on diversity of citizenship and amount in issue. *See* 28 U.S.C. § 1332. Therefore, Kansas law defines the contours of privilege. Fed.R.Evid. 501. The pertinent part of Kan.Stat.Ann. § 65–4915 (Supp.1988) provides that:

(4) "Peer review office or committee" means an individual employed, designated or appointed by, or a committee of or employed, designated or appointed by, a health care provider group and authorized to perform peer review.

(b) Except as provided by Kan.Stat.Ann. § 60–437 [which concerns the waiver of privilege] and amendments thereto and

by subsections (c) and (d) [which pertains to the commissioner of insurance, the state board of healing arts and other health care provider licensing or disciplinary boards], the reports, statements, memoranda, proceedings, findings and other records of peer review committees or officers shall be privileged and shall not be subject to discovery, subpoena or other means of legal compulsion for their release to any person or entity or be admissible in evidence in any judicial or administrative proceeding. Information contained in such records shall not be discoverable or admissible at trial in the form of testimony by an individual who participated in the peer review process. This privilege may be claimed by the legal entity creating the peer review committee or officer, or by the commissioner of insurance for any records or proceedings of the board of governors.

(c) Subsection (b) shall not apply to proceedings in which a health care provider contests the revocation, denial, restriction or termination of staff privileges or the license, registration, certification or other authorization to practice of the health care provider.

Peer review as defined by Kan.Stat.Ann. § 65-4915(3) means any of the following functions:

(A) Evaluate and improve the quality of health care services rendered by health care providers;

(B) determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care;

(C) determine that the cost of health care rendered was considered reasonable by the providers of professional health services in this area;

(D) evaluate the qualifications, competence and performance of the providers of health care or to act upon matters relating to the discipline of any individual provider of health care;

(E) reduce morbidity or mortality;

(F) establish and enforce guidelines designed to keep within reasonable bounds the cost of health care;

(G) conduct of research;

(H) determine if a hospital's facilities are being properly utilized;

(I) supervise, discipline, admit, determine privileges or control members of a hospital's medical staff;

(J) review the professional qualifications or activities of health care providers;

(K) evaluate the quantity, quality and timeliness of health care services rendered to patients in the facility;

(L) evaluate, review or improve methods, procedures or treatments being utilized by the medical care facility or by health care providers in a facility rendering health care.

Thus, peer review has a broad, if not all-encompassing, definition.

On July 1, 1984, the Kansas Legislature amended Kan.Stat.Ann. § 65-4915 *et seq.* to create a peer review privilege and, thereby declared the deliberations of a peer review committee to be non-discoverable and inadmissible in evidence. The creation of the peer review privilege was a response to the Kansas Supreme Court decision in *Wesley Medical Center v. Clark*, 234 Kan. 13, 669 P.2d 209 (1983). In *Clark*, the court held that there was no independent privilege to protect hospital peer review committee records outside of the physician-patient privilege. In legislation similar to the peer review statute, the Kansas Legislature has subsequently created a privilege to protect discovery of risk management programs. Kan.Stat.Ann. § 65-4925 (Supp.1988).

Initially, plaintiff argues that the peer review privilege statute is substantive in nature and therefore should not be applied retrospectively. Therefore plaintiff argues, all responsive documents which were in existence prior to July 1, 1984 are discoverable and should be produced.

Although the peer review statute has both procedural and substantive aspects, it does not impair the substantive law of the underlying action (the alleged negligent awarding of staff privileges). Being procedural in this aspect, it does not seem illogical that it should be invoked, if applicable, to protect documents created prior to the

effective date of the statute. *Samuelson v. Susen,* 576 F.2d 546, 552 (3rd Cir.1978); *Fretz v. Keltner,* 109 F.R.D. 303, 309 (D.Kan.1985). (Although the court found that the hospital peer review privilege had been waived, the court implicitly applied it to interrogatories and requests for admissions filed before the effective date of the statute).

In *Samuelson,* plaintiff, an Ohio doctor, sued two other doctors for defamation and tortious interference with a business and professional relationship. Samuelson claimed that the defendant doctors had defamed him which resulted in his staff privileges being either refused or severely limited in several hospitals. Samuelson sought to depose six physicians and hospital administrators about their decision to deny or limit his staff privileges. Five months after plaintiff filed his complaint, the Ohio Legislature enacted a statute which protected, as privileged, information arising from the deliberation of committees in determining staff privileges. The court found that the peer review privilege did not effect any substantive right of the plaintiff and allowed it to be invoked by the deponents even though the desired information and documents were generated and the action was commenced prior to the effective date of the statute.

■ The court finds the logic of *Samuelson* to be persuasive. The purpose of the Kansas Legislature it appears, in passing Kan.Stat.Ann. § 65–4915 *et seq.* was not to eliminate or to limit the torts of medical malpractice or negligent awarding of staff privileges, but to increase the level of health care in Kansas by protecting the frank and candid deliberations of peer review committees. *See* Kan.Stat.Ann. § 65–4914 (1985). The court concludes the peer review privilege, being procedural in the aspects relevant to the instant motion, may be invoked to protect documents and information that were created before the effective date of the statute.

■ The next issue the court must address is to determine the breadth of the peer review privilege. The peer review privilege, as defined by Kan.Stat.Ann

§ 65–4915, appears designed to protect the deliberations and the documents created *by* the peer review committee and not statements of fact or information supplied *to* the committee for review.

Kan.Stat.Ann. § 65–4915(4)(b) clearly states that "the reports, statements, memorandums, proceedings, findings, and other records *of* peer review committees or officers shall be privileged ..." [Emphasis added]. The language clearly does not include reports reviewed *by* the committee. *See Porter v. Snyder,* 115 F.R.D. 77, 78 (D.Kan.1987). In *Porter,* Judge Kelly found that the analogous language of the risk management privilege, Kan.Stat.Ann. § 65–4925, did "not include incident reports which [were] not reports *of* the review committee, but rather [were] contemporaneous statements of fact relating to incidents which [were] reviewed *by* the committee. Thus, incident reports are distinguishable from the committee's reports and are not included within 65–4925(a)'s protection." [Emphasis supplied]. *Porter,* 115 F.R.D. at 78. No reason appears why the same analysis is not applicable to Kan.Stat.Ann. § 65–4915. Moreover, the court is aware of the venerable legal axiom that privileges are to be narrowly, not expansively, construed. *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974); *In the Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982,* 697 F.2d 277, 278 (10th Cir.1983); *Clark,* 234 Kan. at 25–26, 669 P.2d at 218.

The court's interpretation of the peer review statute is in line with the public policy of Kansas. By enacting Kan.Stat. Ann. § 65–4915, the Kansas Legislature intended to increase the level of health care in the state by protecting the deliberations of peer review committees. The statute says nothing about eliminating the torts of medical malpractice or the negligent awarding of staff privileges. It likewise says nothing about protecting evidence and information about such causes of action unless that information is reflective of the deliberations of the peer review committee. Had it intended to do otherwise, the legisla-

ture could have used language plainly providing for that result.

If the court adopts the interpretation of the defendants, virtually all medical and hospital records would be protected as privileged simply by sending them to the peer committee for review. The twelve definitions of peer review listed in Kan.Stat.Ann. § 65–4915 encompasses all, or almost all aspects of the practice of medicine. Many documents and records generated in a hospital or medical practice could be useful to a peer review officer or committee in performing its duties. If a document was to be privileged solely by the virtue of it being reviewed by a peer review officer or committee and the information in those records could not be discovered or admitted into evidence at trial, it would intolerably thwart legitimate discovery and tend to eliminate medical malpractice cases and the discovery of evidence relevant to the awarding of staff privileges contained in documents, records and papers submitted to the peer review committee. This cannot, in the court's opinion, be the result intended. Such an interpretation could raise significant constitutional implications.

It makes little logical sense, in the court's opinion, to conclude that information about a party, if otherwise discoverable, can be immunized from disclosure simply because it is revealed to a third party, i.e. a peer review committee or other entity. Indeed, prima facie, the disclosure to a third entity, all other things being equal, is usually equated with a waiver of the right to protect otherwise protected information.

Equity further dictates the instant interpretation of the statute. In a significant number of medical malpractice actions, *defendants* are aware of the results of the peer review committee and would have access to the documents both favorable and adverse that were presented to the committee. Thus it would seem inequitable for the defendants, such as in this case, to be able to use the advantageous parts of the records in their defense and bar plaintiff from access to those portions, if any, which are disadvantageous to defendant.

In seeking all documents concerning staff privileges granted to defendant, request No. 10 conflicts with the peer review privilege. However, it also seeks information clearly not protected by the privilege. Plaintiff is entitled to the production of all documents, records and information supplied by the defendant Sandhu to the defendant hospital for the determination of staff privileges. However, plaintiff may not discover any information or documents which were generated by, or "delve into the mind" of, the peer review committee.

IT IS THEREFORE ORDERED that plaintiff's motion to compel should be, and hereby is, denied in part and granted in part. Defendant shall on or before February 12, 1990, produce those documents and records, and the other information, submitted to the peer review committee by Sandhu in his application for staff privileges.

IT IS, BY THE COURT, SO ORDERED.