**STATE ex rel. David and Victoria TEN-NILL, Surviving Parents of Dwayne Franklin Tennill, Deceased, Relators,**

v.

**Honorable Ellen S. ROPER, Respondent.**

No. WD 54576.

Missouri Court of Appeals, Western District.

March 31, 1998.

Max Von Erdmannsdorff, Eric E. Bartlett, Kansas City, for Relators.

Alex Bartlett, Lowell D. Pearson, Terry M. Jarrett, Husch & Eppenberger, Jefferson City, for respondent.

BRECKENRIDGE, Judge.

Relators, David and Victoria Tennill, seek a writ of mandamus ordering Respondent to compel defendant Sunderbruch Corporation ("Sunderbruch") to answer certain interrogatories propounded by Relators. Respondent ruled that the information sought by Relators is shielded from discovery by § 537.035, RSMo 1994,[1] the peer review statute. Relators contend that Sunderbruch is not entitled to protection by the peer review statute because Sunderbruch was not performing peer review. Relators also contend that even if this court finds that Sunderbruch was performing peer review, Sunderbruch made only a "blanket" assertion of the privilege, and thus failed to meet its burden of showing specifically how the requested discovery violates the peer review statute. Because this court finds that Sunderbruch was not a "peer review committee" as defined by § 537.035.2, and thus is not entitled to the peer review privilege, the preliminary writ of mandamus is made absolute.

In the underlying case, Relators filed a wrongful death action against Charter Behavioral Health System of Columbia, Inc. ("Charter"), Sunderbruch, and Dr. Glenna C. Burton, M.D. In 1989, Sunderbruch, an Iowa corporation doing business in the State of Missouri, entered into a contract in which it agreed to "implement and perform" cost containment measures for the Missouri State Employees' Retirement System ("MOSERS"). On January 1, 1994, MOSERS assigned the contract to the Missouri Consolidated Health Care Plan ("MCHCP"). The MCHCP is a body corporate, created by statute, whose purpose is to cover the medical expenses of state officers, employees, retirees, and their dependents. Section 103.005.

The cost containment measures Sunderbruch agreed to implement pursuant to the contract included precertifying and authorizing all non-emergency hospital admissions and, after admission, performing "continued stay reviews" at least every three days on all patients. Under the continued stay review, a coordinator from Sunderbruch determines whether a patient meets certain criteria to remain in the hospital. If the coordinator decides that the patient does not need to remain hospitalized, the coordinator refers the patient to a physician reviewer from Sunderbruch. If the physician reviewer finds that continued hospitalization is not medically necessary, the patient's attending physician is notified. Sunderbruch then issues a denial letter to the patient, attending physician, hospital, payer, and the MCHCP. The patient, the attending physician, or the hospital can request a reconsideration of the continued stay denial.

Relators' son, Dwayne Tennill, was employed as a security guard at the Moberly Correctional Center, and thus was an employee of the State of Missouri. He was hospitalized at Charter for depression from July 18, 1994, until his discharge on August 23, 1994. Dr. Burton was his treating physician. On August 12, 1994, Sunderbruch sent a letter to Dwayne at his home address, although Dwayne was still hospitalized, informing him that "The Missouri State Medical Care Plan has retained The Sunderbruch Corporation to review your medical needs and it has determined that further inpatient hospital care is not required after noon on August 15, 1994 because the services required can be adequately performed at a lower level of care." The unsigned letter stated that the decision was made by a physician consultant after the consultant evaluated Dwayne's case "and/or" conversed with Dwayne's physician. On August 23rd, the day he was discharged from Charter, Dwayne shot himself. The letter from Sunderbruch had been opened and was on the kitchen table in Dwayne's home. He died as a result of the gun shot wound and direct complications therefrom on August 31, 1994.

In their wrongful death case against Sunderbruch, Relators propounded interrogato-

---

1. Statutory references are to the Revised Statutes of Missouri 1994, unless otherwise indicated.

ries seeking information regarding Sunderbruch's August 12, 1994 letter to Dwayne. Relators sought information about the physician consultant referenced in the letter, the names and addresses of every person who evaluated Dwayne's case, whether Sunderbruch was aware when it sent the letter that Dwayne was in the hospital receiving psychiatric care and what expectations Sunderbruch had that the letter would reach him at the hospital, all records and facts reviewed by Sunderbruch prior to sending the letter, and the names and addresses of all doctors Sunderbruch consulted in reaching the decision expressed in the letter. Sunderbruch objected to the interrogatories, claiming that the information was privileged under Missouri's peer review statute. The Honorable Ellen S. Roper, the trial judge, overruled Relator's motion to compel Sunderbruch to answer the interrogatories. Relators filed a petition for writ of mandamus,[2] and this court entered a preliminary writ of mandamus directing Respondent to order Sunderbruch to answer the interrogatories.

 "A writ of prohibition and mandamus is the proper remedy for curing discovery rulings that exceed a court's jurisdiction or constitute an abuse of the court's discretion." *State ex rel. Atchison, Topeka & Santa Fe R.R. v. O'Malley*, 888 S.W.2d 760, 761 (Mo.App.1994). Mandamus is appropriate only if the relators have a clear and unequivocal right that presently exists. *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 576 (Mo. banc 1994). "To determine whether the right to *mandamus* is clearly established and presently existing, the court examines the statute under which the relator claims the right." *State ex rel. Dehn v. Schriro*, 935 S.W.2d 641, 644 (Mo.App.1996).

 Rule 57.01(a) allows any party to "serve upon any other party written interrogatories to be answered by the party served...." As in other methods of discovery, parties may obtain information through interrogatories "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Rule 56.01(b)(1). Sunderbruch asserts that the information sought in relators' interrogatories is privileged pursuant to Missouri's peer review statute, § 537.035.4. Section 537.035.4 provides as follows:

Except as otherwise provided in this section, the proceedings, findings, deliberations, reports, and minutes of peer review committees concerning the health care provided any patient are privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for their release to any person or entity or be admissible into evidence in any judicial or administrative action for failure to provide appropriate care. Except as otherwise provided in this section, no person who was in attendance at any peer review committee proceeding shall be permitted or required to disclose any information acquired in connection with or in the course of such proceeding, or to disclose any opinion, recommendation, or evaluation of the committee or board, or any member thereof; provided, however, that information otherwise discoverable or admissible from original sources is not to be construed as immune from discovery or use in any proceeding merely because it was presented during proceedings before a peer review committee nor is a member, employee, or agent of such committee, or other person appearing before it, to be prevented from testifying as to matters within his personal knowledge and in accordance with the other provisions of this section, but such witness cannot be questioned about testimony or other proceedings before any health care review committee or board or about opinions formed as a result of such committee hearings.

As the Missouri Supreme Court said, the purpose of the peer review privilege is "to encourage health care professionals to engage in candid, critical analysis of their peers' performance by shielding participants from liability for their comments during peer review and by ensuring that their disclosure

---

2. Relators filed a prior petition for writ of mandamus, which was denied on March 5, 1997.

cannot be compelled." *State ex rel. Lester E. Cox Medical Centers v. Darnold,* 944 S.W.2d 213, 215 (Mo. banc 1997).

A peer review committee is defined in § 537.035.1(2) as "a committee of health care professionals with the responsibility to evaluate, maintain, or monitor the quality and utilization of health care services or to exercise any combination of such responsibilities." Section § 537.035.2 describes the composition of a peer review committee:

2. A peer review committee may be constituted as follows:

(1) Comprised of, and appointed by, a state, county or local society of health care professionals;

(2) Comprised of, and appointed by, the partners, shareholders, or employed health care professionals of a partnership or professional corporation of health care professionals;

(3) Appointed by the board of trustees, chief executive officer, or the organized medical staff of a licensed hospital, or other health facility operating under constitutional or statutory authority, or an administrative entity of the department of mental health recognized pursuant to the provisions of subdivision (3) of subsection 1 of section 630.407, RSMo;

(4) Any other organization formed pursuant to state or federal law authorized to exercise the responsibilities of a peer review committee and acting within the scope of such authorization.

■ When construing a statute, courts must "ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning." *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 19 (Mo. banc 1995).

With this principle of statutory construction in mind, this court finds that Sunderbruch does not fall under any of the categories of acceptable compositions of a "peer review committee." Sunderbruch is a private Iowa corporation doing business in the State of Missouri. Sunderbruch and its employee-reviewers are not appointed by a state, county or local society of health care professionals. Subsection (1), therefore, does not apply. Subsection (2) does not apply either, as Sunderbruch is not partnership or professional corporation of health care professionals. Although Sunderbruch does employ physicians and nurses who qualify as "health care professionals" as defined by § 537.035.1(1), its staff also consists of non-health care professionals. Sunderbruch is not a hospital, health facility, or administrative entity of the department of mental health, so subsection (3) does not apply.

Respondent contends that Sunderbruch qualifies as a peer review committee under subsection (4). Respondent argues that Sunderbruch fits the structural format described in this subsection because Sunderbruch was operating under a contract with the MCHCP, and the MCHCP is an organization formed pursuant to state law. Sunderbruch's contractual relationship with the MCHCP, a state organization, does not transform Sunderbruch, a private corporation, into an organization formed pursuant to state law. Nor does the existence of a contractual relationship with a state organization satisfy the explicit requirement under the statute that the committee itself be an organization formed pursuant to state law. Sunderbruch does not fall under any of the categories of a peer review committee listed in § 537.035.2.[3]

Because Sunderbruch does not fit within any of the acceptable formats of a peer review committee under § 537.035.2, it is not entitled to assert the peer review privilege in refusing to answer the interrogatory ques-

---

**3.** Section 537.035.2 was amended on August 28, 1997 to add another possible structural format for a peer review committee. Section 537.035.2(5), RSMo Supp.1997 provides that a peer review committee may be comprised of those "[a]ppointed by the board of directors, chief executive officer or the medical director of the licensed health maintenance organization." Sunderbruch does not fall under this category either, as it is not a health maintenance organization.

tions propounded by Relators. As this point is dispositive, we need not reach Relators' second point. The preliminary writ of mandamus is made absolute, and the trial court is ordered to enter a discovery order consistent with this opinion.[4]

HANNA, P.J., and LOWENSTEIN, J., concur.

---

4. In their motion to compel, Relators sought answers to interrogatory questions to which Sunderbruch had objected on bases other than the peer review privilege. Additionally, Relators argued that Sunderbruch gave evasive and incomplete answers to some of the interrogatory questions. Relators' petition for writ of mandamus and brief to this court concern only those interrogatory questions to which Sunderbruch objected on the basis of the peer review privilege; therefore, this order concerns only those questions.