STATE ex rel. KIRKSVILLE MISSOURI HOSPITAL COMPANY LLC d/b/a Northeast Regional Medical Center, Relator,

v.

Honorable Ralph H. JAYNES, Visiting Judge, Circuit Court of Boone County, MO, Respondent.

No. WD 72684.

Missouri Court of Appeals, Western District.

Nov. 9, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 2010.

Application for Transfer Denied Jan. 25, 2011.

Philip R. Dupont and Albert S. Laferte, Kansas City, MO, for relator.

Leland F. Dempsey and Ashley L. Baird, Kansas City, MO, for respondent.

Before Writ Division: JAMES E. WELSH, Presiding Judge, MARK D. PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

This is an original proceeding in prohibition. Relator Kirksville, Missouri, Hospital Company, LLC, d/b/a Northeast Regional Medical Center ("NERMC") seeks to prohibit the respondent, the Honorable Ralph H. Jaynes, visiting judge in the Circuit Court of Boone County, Missouri, from allowing plaintiffs, Francis and Janie Watson ("Watsons") to discover documents relating to the credentialing of Dr. John Bailey ("Dr. Bailey") in an underlying medical malpractice and negligent credentialing action. Forty pages of documents were ordered produced, following *in camera* review. NERMC claims all of these documents are protected from discovery by section 537.035.4,[1] the peer review statute.

Our preliminary writ of prohibition is dissolved.

## Factual Background

Dr. Bailey submitted an application for surgical privileges in back surgery to NERMC in mid–1997. Temporary privileges were afforded Dr. Bailey. At or near the same time, a question arose about whether Dr. Bailey had successfully completed training with the Columbia Spine Fellowship. NERMC's Director of Surgery expressed a concern that Dr. Bailey had been granted temporary privileges before this issue had been resolved. He proposed submitting Dr. Bailey's first twenty-five spinal instrumentation cases to an independent, fellowship trained, spine surgeon for review.

NERMC's Executive Committee approved this recommendation and retained Dr. John Flood, an independent spine surgeon practicing in Michigan, for this purpose. Dr. Flood reviewed twenty cases involving spine surgeries performed by Dr. Bailey. Dr. Flood prepared a written report, which he submitted to NERMC. NERMC contends the report was sought as a part of considering whether to afford Dr. Bailey permanent privileges.

The Watsons filed a lawsuit against Dr. Bailey and NERMC in 2004 claiming Dr. Bailey negligently treated and performed surgery on Mr. Watson. The Watsons further claim that NERMC was negligent in granting Dr. Bailey staff privileges to perform spine surgeries. The Watsons learned of Dr. Flood's report and took Dr. Flood's deposition on April 29, 2008.[2] Numerous objections were asserted by NERMC in reliance on the peer review privilege described in section 537.035. The Watsons filed a motion for enforcement of discovery relating to the objections, which was thereafter granted in part and denied in part. Dr. Flood's second deposition was conducted on September 18, 2009, with a Special Discovery Master, John Hutcherson, in attendance.

Before Dr. Flood's second deposition, the Watsons filed a motion for enforcement of discovery or in the alternative, an *in-camera* review, relating to specific

---

1. All statutory references are to RSMo 2000, as supplemented, except as otherwise noted.

2. The record does not indicate how the Watsons learned about Dr. Flood's review of Dr. Bailey's cases.

documents alleged to involve Dr. Flood's report and identified on a privilege log prepared by NERMC. Specifically, the Watsons sought production of documents bearing Bates Numbers NERMC/PR 000001 through 0000066 which the Watsons alleged involved Dr. Flood's recommendations to NERMC concerning Dr. Bailey's credentialing and his knowledge and ability to perform complicated spine surgery.

The motion to enforce discovery was considered by the Special Discovery Master. The Special Discovery Master entered a report on January 15, 2010. The report indicated that the documents Bates Numbered NERMC/PR 000001 through 000007, 0000016 through 0000019, and 0000057 had already been produced by agreement. The report indicated that the Special Discovery Master had reviewed the remaining documents *in camera*. The Special Discovery Master granted the motion to enforce discovery for the documents Bates Numbered 000008 through 000015, 000020 through 000043, and 000058 through 000065. The Special Discovery Master advised that the documents ordered produced should be redacted to remove any patient identifying information protected by HIPPA.

The Special Discovery Master specifically found that the documents ordered produced were not protected as peer review pursuant to section 537.035.4, although the report did not provide an explanation for this conclusion.

At our request, the forty pages of documents ordered produced, and thus at issue in this proceeding, were delivered by NERMC for our *in camera* review on October 12, 2010. The contested documents fall into three categories: (1) Dr.

Flood's report generated following review of several of Dr. Bailey's patient files; (2) Dr. Bailey's response to Dr. Flood's report; and (3) minutes from Executive Committee Peer Review meetings discussing Dr. Flood's report.[3]

## Analysis

Section 537.035.4 provides:

Except as otherwise provided in this section, the interviews, memoranda, proceedings, findings, deliberations, reports, and *minutes of peer review committees,* or the existence of the same, *concerning the health care provided any patient* are privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for their release to any person or entity or be admissible into evidence in any judicial or administrative action for failure to provide appropriate care. Except as otherwise provided in this section, *no person who was in attendance at any peer review committee proceeding* shall be permitted or required to disclose any information acquired in connection with or in the course of such proceeding, or to disclose any opinion, recommendation, or evaluation of the committee or board, or any member thereof; provided, *however, that information otherwise discoverable or admissible from original sources is not to be construed as immune from discovery or use in any proceeding merely because it was presented during proceedings before a peer review committee* nor is a member, employee, or agent or such committee, or other person appearing before it, to be prevented from testifying as to matters within his personal knowledge

---

3. We draw these descriptions, loosely, from NERMC's privilege log relating to the forty pages of contested documents.

and in accordance with the other provisions of this section, but such witness cannot be questioned about testimony or other proceedings before any health care review committee or board or about opinions formed as a result of such committee hearings. The disclosure of any interview, memoranda, proceedings, findings, deliberations, reports, or minutes to any person or entity, including but not limited to governmental agencies, professional accrediting agencies, or other health care providers, whether proper or improper, shall not waive or have any effect upon its confidentiality, nondiscoverability, or nonadmissibility.

(Emphasis added.) NERMC argues that the documents ordered produced involve a credentials committee's investigations,[4] minutes, reports, and deliberations about Dr. Bailey's prior surgeries and thus "concern the health care provided to any patient." NERMC also argues that redacting patient information does not protect or preserve the peer review process. Finally, NERMC argues that Dr. Flood is not an "original source" as that phrase. is used in section 537.035.4.

The Respondent argues that not all functions of credentials committees are exempt from discovery and that they are not seeking discovery concerning the health care provided to Dr. Bailey's patients but, rather, discovery concerning Dr. Bailey's abilities as a spine surgeon. Respondents argue that the findings and recommendations given by a person who is hired to guide a hospital in making a credentialing decision is not protected by section 537.035.4 as that person is an "original source."

Section 537.035.4 describes two categories of privileged information. In the first sentence, section 537.035.4 states that "[e]xcept as otherwise provided in this section," certain specified documents *"of peer review committees"* are protected from discovery, but *only if the documents concern "the health care provided any patient."* In the second sentence, section 537.035.4 states that "[e]xcept as otherwise provided in this section, no person *who was in attendance at any peer review committee proceeding"* is permitted to disclose information acquired from the proceeding.[5]

The second sentence of section 537.035.4 ends with a semicolon and is followed by a lengthy passage commencing with the words "provided, however." This lengthy passage appears intended to describe the "exceptions" referred to by the phrase "except as otherwise provided in this section" prefacing the first and second sentences of section 537.035.4. The "exceptions" then described are: (a) that information otherwise discoverable or admissible from *original sources* will not be immune from discovery merely because it was presented during proceedings before a peer review committee; and (b) that a member, employee, or agent of a peer review committee, or any person appearing before such a committee, cannot be prevented from testifying about matters within their personal knowledge, though they cannot testify about the proceedings of a committee, including about any testimony they may have provided to a committee.

Given this construction, we need not address the application of the "exceptions"

---

4. Though NERMC uses the word "investigations," that word does not appear in section 537.035.4 as a part of the legislature's delineation of peer review committee documents protected from discovery.

5. The legislature's omission of the qualifying language relating to whether such information concerns the health care provided any patient is noted, but the significance of the omission is not addressed in this opinion.

described in section 537.035.4 unless we first determine that the contested documents are preliminarily protected from production by either the first or second sentence of section 537.035.4.

### Dr. Flood's Report

■ We are first compelled to address a fundamental question relating to the availability of prohibition with respect to certain portions of Dr. Flood's report. Our courts have "a strong reluctance to review interlocutory allegations of nonjurisdictional trial court error in prohibition actions." *State ex rel. Faith Hosp. v. Enright,* 706 S.W.2d 852, 855 (Mo. banc 1986) (citing *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889 (Mo. banc 1983)). However, we have observed that:

> [F]rom time to time in peculiarly limited situations there are instances in which absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order. In such circumstances, the extemporaneous character of prohibition may be the remedy to be applied.

*State ex rel. Richardson v. Randall,* 660 S.W.2d 699, 701 (Mo. banc 1983). "The basis for prohibition particularly applies where privileges are at issue." *State ex rel. Wilfong v. Schaeperkoetter,* 933 S.W.2d 407, 408 (Mo. banc 1996). As noted in *Faith Hospital,* a violation of a privilege "cannot be adequately remedied on appeal. Once the proverbial bell has been rung, its sound can neither be recalled nor subsequently silenced." 706 S.W.2d at 855. Thus, prohibition will not lie unless absolute irreparable harm that cannot be adequately remedied on appeal has been established. The burden is on NERMC to establish that such harm exists. *State ex rel. Vanderpool Feed & Supply Co. v. Sloan,* 628 S.W.2d 414, 416 (Mo.App.1982). NERMC has not met this burden with respect to several pages of Dr. Flood's report.

■ Our detailed and independent review of the materials submitted by the parties in connection with this proceeding has revealed that seven pages of Dr. Flood's report are already in the Watsons' possession. On these seven pages, Dr. Flood details his concerns about seven of the twenty Dr. Bailey patient charts he reviewed. During oral argument, counsel for NERMC conceded that these seven pages of Dr. Flood's report are in the Watsons' possession. Consistent with this fact, *these seven pages were not the subject of the Watsons' motion to enforce discovery.* The Watsons' motion to enforce discovery states:

> According to Plaintiff's discovery, the review of Dr. Flood only contains seven separate pages listed by case number, with a detailed typewritten critique of each of these spinal cases. Interestingly, Dr. Flood's review does not contain a cover sheet or cover letter to a staff member of NERMC with his recommendation concerning the granting of privileges to Dr. Bailey, and similarly his review also does not contain a signature page from John Flood, D.O.

It is apparent, therefore, that with respect to Dr. Flood's report, the Watsons' motion to enforce was only seeking production of those portions of Dr. Flood's report, if any, *that they did not already have in their possession.*

NERMC's petition for writ of prohibition and its brief in this original proceeding in prohibition assert that Dr. Flood's report is privileged under section 537.035.4 and that prohibition is necessary to prevent NERMC from the irreparable harm of its disclosure. NERMC failed to advise this court, however, that seven pages of Dr. Flood's report are already in the Watsons' possession. NERMC also failed to

advise this court that of the forty pages of documents at issue in this proceeding, *twenty eight* of those pages are four sets of copies of the seven pages of Dr. Flood's report already in the Watsons' possession. (Bates Numbers 000008 through 000014; 000020 through 000026; 000028 through 000034; 000058 through 000064).[6] Had we not sought review of the contested documents *in camera,* that fact would not have been known to us.

A permanent writ of prohibition to prevent production of documents the Watsons already have will not spare NERMC from absolute irreparable harm. Assuming, *arguendo,* that the seven pages of Dr. Flood's report in the Watsons' possession are privileged peer review under section 537.035.4, the "harm" of their production has already occurred. The proverbial bell has already been rung. *Faith Hosp.,* 706 S.W.2d at 855. NERMC is not entitled to a permanent writ of prohibition to protect itself from an alleged harm that has already occurred.

Our preliminary writ of prohibition is dissolved as to the documents ordered produced and bearing Bates Numbers 000008 through 000014; 000020 through 000026; 000028 through 000034; and 000058 through 000064.

The documents we have reviewed *in camera* do contain a final page to Dr. Flood's report.[7] It appears in the documents twice at Bates Numbers 000015 and 000027. This page is not already in the Watsons' possession. Thus, we must address whether Dr. Flood's report is privileged by virtue of either the first or second sentence of section 537.035.4.

**(i) Is Dr. Flood's report a "peer review committee report" concerning the health care provided any patient**

NERMC contends that its Executive Committee was operating as a credentials committee. A credentials committee is a "peer review committee" as that term is defined in section 537.035.1(2). *Faith Hosp.,* 706 S.W.2d at 855. In *Faith Hospital,* plaintiffs sought production of "peer review committee reports relating to the performance of one of the defendant physicians ... with respect to *other* patients from 1980 until the date of the complained of surgery." *Id.* The Supreme Court held that this request fell "squarely within the exemption from discovery created by the General Assembly in section 537.035.4." *Id.* However, the Supreme Court was careful to observe:

> [N]ot all functions of credentials committees are exempt from discovery under section 537.035.4. By its own terms, the exemption provided by this section is limited to those findings and deliberations "concerning the health care provided any patient." *Id.* **Credentials committee findings and deliberations** are not exempt from discovery, therefore, **unless they specifically concern the health care provided a patient.**

*Id.* (emphasis added). The Court made its writ of prohibition absolute "insofar as it relates to the proceedings, findings, deliberations, reports and minutes *of peer review committees, including credentials committees,* concerning the health care provided any patient." *Id.* at 856 (emphasis added).

---

6. We are cognizant that our *in camera* review of the contested documents afforded us this insight but do not believe our disclosure of the nature of twenty eight pages of those documents is inappropriate, under the circumstances.

7. We are not inappropriately revealing information based on an *in camera* review by this disclosure, as Dr. Flood testified *in his deposi*tion that there would have been a final page to his report beyond the seven pages marked as exhibits.

NERMC argues that *Faith Hospital* is factually indistinguishable from this case. We disagree. *Faith Hospital* held that production *"of peer review committee reports"* addressing performance of a physician with respect to other patients could not be compelled. 706 S.W.2d at 856. Dr. Flood is not a member of NERMC's Executive Committee. We must determine, therefore, whether Dr. Flood's report is a "peer review committee" report within the intended scope of the first sentence of section 537.035.4 merely because it was commissioned and reviewed by NERMC's Executive Committee. *Faith Hospital* did not address this question.

■ We do not believe Dr. Flood's report is "a peer review committee report" as that phrase was intended by the legislature in section 537.035.4. "When construing a statute, courts must 'ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning.'" *State ex rel. Tennill v. Roper*, 965 S.W.2d 945, 948 (Mo.App. W.D.1998) (quoting *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995)). The first sentence of section 537.035.4 protects "interviews, memoranda, proceedings, findings, deliberations, reports, [or] minutes *of peer review committees.*" Dr. Flood's report does not fall into the plain and ordinary meaning of any of these categories. Instead, Dr. Flood's report reflects the knowledge and/or opinions held by an outside source.

We faced a similar situation in *Tennill*, 965 S.W.2d at 948. There, we concluded that a private outside company hired to conduct peer reviews of a hospital's physicians is not a "peer review committee" as defined by the legislature in sections 537.035.1(2) and 537.035.2. *Id.* Similarly, Dr. Flood is a private, outside physician hired to review Dr. Bailey's files. If Dr.

Flood's activities are insufficient to permit him to be characterized as a "peer review committee" under section 537.035, it follows that Dr. Flood's report cannot be characterized as a "peer review committee" report.

NERMC disagrees and argues that since Dr. Flood's report was *requested* by NERMC and was reviewed by the Executive Committee for its consideration as a part of the credentialing decision involving Dr. Bailey, the report must be viewed as a peer review committee report. NERMC would thus have us rewrite the first sentence of section 537.035.4 to include within the specific delineation of privileged peer review committee documents any information, data, reports, or records *commissioned or reviewed by* a peer review committee. We are not empowered to rewrite the statute in this fashion. *Jepson v. Stubbs*, 555 S.W.2d 307, 313 (Mo.1977). "If the legislature had intended that all information provided to the committee be privileged, it would have expressly so said. It did not." *Trinity Med. Ctr., Inc. v. Holum*, 544 N.W.2d 148, 157 (N.D.1996).

■ A similar argument was advanced in *Hill v. Sandhu*, 129 F.R.D. 548 (D.Kan. 1990). The Kansas peer review statute is similar to Missouri's with respect to the language affording privilege to certain documents *of* a peer review committee. In *Hill*, the court held:

> Kan.Stat.Ann. section 65–4915(4)(b) clearly states that "the reports, statements, memorandums, proceedings, findings, and other records *of* peer review committees or officers shall be privileged. . . ." The language does not include reports reviewed *by* the committee. . . .
>
> The court's interpretation of the peer review statute is in line with the public policy of Kansas. By enacting Kan.Stat. Ann. section 65–4915, the Kansas Legis-

lature intended to increase the level of health care in the state by protecting the deliberations of peer review committees. The statute says nothing about eliminating the torts of medical malpractice or the negligent awarding of staff privileges. It likewise says nothing about protecting evidence and information about such causes of action *unless that information is reflective of the deliberations of the peer review committee.* Had it intended to do otherwise, the legislature could have used language plainly providing for that result.

*Id.* at 550–51 (emphasis added). We are persuaded by this analysis, particularly as it is in line with *Faith Hospital,* where our Supreme Court similarly construed the scope of the first sentence of section 537.035.4 to be limited to "credentials committee *findings and deliberations.*" 706 S.W.2d at 855. We thus conclude that a report prepared by a third person is not a peer review committee report under section 537.035.4 merely because the report was commissioned by and subsequently reviewed by the peer review committee. Because we conclude that Dr. Flood's report is not a peer review committee report, we need not address whether Dr. Flood's report concerns the health care provided any patient.

Further, notwithstanding NERMC's contention in this proceeding that Dr. Flood's report was sought as a part of its consideration whether to afford Dr. Bailey permanent privileges, the record suggests otherwise. In the letter prepared by Dr. Glenn Browning, NERMC's Director of Surgery, wherein the recommendation to seek outside review of Dr. Bailey's first spine instrumentation surgeries originated, Dr. Browning states:

> I realize that this would be an extensive process but it seems one fair way of getting some type of documentation in case there were to be any lawsuits brought against Dr. Bailey. It would certainly show that the hospital has been diligent in trying to protect the rights of the patients as well as the rights of Dr. Bailey.

NERMC followed Dr. Browning's suggestion. The original purpose for the outside review of Dr. Bailey's cases was not, therefore, to credential Dr. Bailey but to solve a problem. That problem, as expressed in Dr. Browning's letter, was that privileges had already been extended to Dr. Bailey notwithstanding evidence that he had failed to successfully complete a fellowship program in spine surgery. According to Dr. Browning's letter, NERMC apparently envisioned the ability to use the outside report to defend itself in later lawsuits. NERMC cannot now shield Dr. Flood's report from discovery by claiming, after seeing the report, that the report was requested in connection with a credentials decision.[8]

---

**8.** NERMC asserted during oral argument that it is entitled to "shield" itself from lawsuits asserting a claim of negligent credentialing with a favorable outside report addressing a physician's qualifications, while still protecting the report from discovery, if it is unfavorable, under section 537.035.4, relying on *LeBlanc v. Research Belton Hospital,* 278 S.W.3d 201 (Mo.App. W.D.2008). We do not agree. *LeBlanc* concluded that section 537.035.3, which immunizes specified individuals from liability in connection with their participation in, or reliance upon, peer review committee proceedings, did not prevent recognition of the cause of action of negligent credentialing in Missouri. *Id.* at 206–07. Though the court observed that section 537.035.3 provides qualified immunity for individuals "if their negligence in granting staff privileges derives from their good faith reliance on a peer review committee's recommendation," *id.* at 206, the court in no way discussed the discoverability of reports prepared by outside sources pursuant to section 537.035.4.

**(ii) Is Dr. Flood a person who was in attendance at a peer review committee proceeding**

██ The second sentence of section 537.035.4 prohibits a person who was in attendance at a peer review committee proceeding from disclosing information acquired as a result. Dr. Flood did not attend a meeting of the NERMC Executive Committee. His report, therefore, is not immune from discovery pursuant to the second sentence of section 537.035.4, as it is not information acquired by Dr. Flood in connection with or in the course of his attendance at a peer review committee proceeding.

NERMC has not met its burden to establish that Dr. Flood's report is immune from discovery pursuant to either the first or second sentence of section 537.035.4. We need not, therefore, address the "exceptions" to the privilege afforded by the first and second sentences of section 537.035.4. Our preliminary writ of prohibition is dissolved as to the documents Bates Stamped 000015 and 000027.

### Dr. Bailey's Response to Dr. Flood's Report

The second category of documents within those ordered produced is Dr. Bailey's response to Dr. Flood's report. This document bears Bates Numbers 000035 through 000042. We have reviewed this document *in camera.*

██ We learned during oral argument that, as was the case with seven pages from Dr. Flood's report, Dr. Bailey's letter is already in the Watsons' possession, albeit in a redacted format. We do not know from our record the portions of the letter which are redacted. Though prohibition will not lie to protect a document from production that has already been produced, we must nonetheless determine whether Dr. Bailey's letter is privileged, in general, because it appears unknown portions of the letter have not been produced.

**(i) Is Dr. Bailey's letter a peer review committee report concerning the health care provided any patient**

Dr. Bailey's letter is not "a peer review committee report." As was the case with Dr. Flood's report, though Dr. Bailey's letter was commissioned and reviewed by NERMC's Executive Committee, it was not prepared by the Executive Committee. We need not address, therefore, whether Dr. Bailey's letter "specifically concern[s] the health care provided a patient." *Faith Hosp.,* 706 S.W.2d at 855.

**(ii) Is Dr. Bailey a person who was in attendance at a peer review committee proceeding**

Dr. Bailey did not attend a NERMC Executive Committee meeting. His letter, therefore, is not immune from discovery pursuant to the second sentence of section 537.035.4, as it is not information acquired by Dr. Bailey in connection with or in the course of his attendance at a peer review committee proceeding.

NERMC has not met its burden to establish that Dr. Bailey's letter is privileged pursuant to either the first or second sentence of section 537.035.4. Our preliminary writ of prohibition is dissolved as to the documents Bates Stamped 000035 through 000042.

### Minutes from Executive Committee Peer Review Meetings

**(i) Are the minutes peer review committee documents concerning the health care provided any patient**

██ The third category of documents ordered produced are minutes from Executive Committee Peer Review meetings. These document bear Bates Numbers 000043 and 000065. Minutes of an Executive Committee acting as a credentials

committee are clearly "a peer review committee" document as defined by the legislature in the first sentence of section 537.035.4.[9] However, our inquiry does not end here. We must examine the nature of the minutes, as *"[c]redentials committee findings and deliberations* are not exempt from discovery ... *unless they specifically concern the health care provided a patient." Faith Hosp.,* 706 S.W.2d at 855 (emphasis added).

 NERMC argues that the minutes concern the health care provided a patient. Based on our *in camera* review of the minutes, we do not agree. The minutes Bates Numbered 000043 acknowledge receipt of Dr. Flood's report, express reactions to the report without reference to any particular patient, and address the best means of responding to the report. The minutes do not specifically discuss the health care provided any patient. The minutes Bates Numbered 000065 similarly discuss follow up means of evaluating Dr. Bailey's performance in response to Dr. Flood's letter but do not specifically discuss the health care provided any patient.

Our preliminary writ of prohibition is dissolved as to the documents Bates Numbered 000043 through 000065, though production of these documents will remain subject to the redacting instructions [10] included within the Special Discovery Master's January 15, 2010 report.

We do observe that NERMC's privilege log asserts the additional privilege of "attorney/client privilege" with respect to these two documents. However, that privilege was not asserted by NERMC as the basis for its request for writ of prohibition, and NERMC has made no attempt in this proceeding to protect its Executive Committee minutes from production based on the attorney/client privilege. Whether the minutes should be protected from discovery on the basis of the attorney/client privilege is beyond the scope of these proceedings.

As a final observation, we note that none of the documents at issue in this proceeding include patient identifying information, which would require redaction before the documents are produced. Though the Special Discovery Master's report ordered that patient identifying information be redacted, we conclude this was an instruction included in the report out of an abundance of caution. We need not, therefore, address NERMC's contention that redaction of patient identifying information from documents otherwise protected from discovery under section 537.035.4 is not an appropriate mechanism for protecting or preserving the peer review process.

### Conclusion

Our preliminary writ in prohibition is dissolved.

All concur.

---

9. As a result, we need not discuss the application of the second sentence of section 537.035.4 to the contested minutes.

10. The redacting instructions involve removing discussions about other doctors or topics completely unrelated to this case.